LINGSWEILER et al. v. HART et al.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. WILLS—CONSTRUCTION—ESTATE.

A devise in trust to pay the income to testator's widow for life, and on her death to divide the estate equally between testator's children, or the issue of any children who should die leaving issue, gives to each of the children of testator, living at his death, an estate alienable during the lifetime of the widow, but defeasible as to any child on his death during the widow's lifetime.

2. VENDOR AND PURCHASER—CONVEYANCE OF DEFEASIBLE ESTATE—RIGHTS OF VENDORS INTER SE.

Devisees of an estate in remainder, defeasible as to any who should die during the lifetime of the life tenant, conveyed it with joint and several covenants that they were seised of an indefeasible estate of inheritance, and took from the purchaser, for part of the price, a mortgage bond which provided that, if the title of any of the devisees (grantors) should fail, the purchaser might make a reasonable payment to acquire such interest, and that the sum so paid should be a credit on the bond, and that the covenants of warranty should only remain in force for the residue. *Held*, that where one of the devisees died during the lifetime of the life tenant, and the purchaser acquired her share of the property from her children, to whom, by the terms of the will, it passed, her estate was not entitled to share in the amount due under the bond, since the consideration failed as to her. O'Brien, J., dissenting.

3. SAME—FAILURE OF TITLE OF ONE OF SEVERAL VENDORS.

Where the owners of a defeasible estate convey it with a joint and several warranty, and take a bond for the price, stipulating that, if the share of any grantor should fail, the purchaser might acquire such share, and deduct the amount so expended from the amount of the bond, and that the liability of the grantors on their covenants should remain in force only as to the residue, and the defeasance occurred as to one of the grantors, the other grantors are entitled to be subrogated to the rights of the purchaser as to so much of the amount expended by him and deducted from the bond in acquiring the defeated interest as should exceed the interest therein of the grantor whose estate was defeated. O'Brien, J., dissenting.

Appeal from special term, New York county.

Action by Charles Lingsweiler and others against George William Hart, as trustee, impleaded with others, to foreclose a mortgage. There was a judgment in favor of plaintiffs, and from portions thereof defendant George William Hart appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Alexander Thain, for appellant.

H. B. Closson, for respondent Loeb.

Arthur R. Robertson, for respondents Lingsweiler and others.

INGRAHAM, J. I agree with Mr. Justice O'BRIEN that the interest of Mrs. Schoeneman in the real estate in question at the time of the conveyance was dependent upon the precedent life estate in her mother; that, by her death prior to her mother's, her interest ceased, and her children took a vested estate in remainder under the will; and that this interest of Mrs. Schoeneman was alienable, though liable to be defeated by her death before the death of her mother, although I am of opinion that the remainder was contingent upon her surviving her mother, the intention of the testator clearly being to postpone the vesting of the estate until the death of the life tenant, for, by the will, the direction was that after the death of her

mother the whole of said property, both real and personal, was to be divided and paid over equally among the testator's children then surviving, or the issue of any children if any should die leaving issue, such issue to take a parent's share.   The estate granted, however, by either of the children of the testator during the lifetime of the mother, would be dependent upon such child's surviving her mother; and, in case the child died before the mother, no estate could pass under such a conveyance.   Upon the death, therefore, of Mrs. Schoeneman, the undivided sixth interest in the estate vested in her children, subject to the life estate of her mother; and the defendant Loeb, upon the happening of that contingency, was the owner in fee of but five-sixths of the real property described in the conveyance, the other one-sixth being vested in the children of Mrs. Schoeneman. As no estate vested in Mrs. Schoeneman, no estate passed by her deed to Loeb.   Had she survived her mother, the remainder would then have vested, and, under the covenant of warranty in the deed, an estate would then have passed to Loeb, conveying her undivided one-sixth of the property of the testator; but, such interest never having vested, no estate passed under the deed of the one undivided one-sixth devised to her upon the death of her mother.   It is quite apparent from a consideration of the deeds and the bond and mortgage that the parties to this transaction correctly appreciated the situation, understood the effect upon Loeb's title to the property of the death of one or more of the children of the testator before their mother, and that the deed and bond and mortgage were prepared with a view of protecting Loeb on the happening of such a contingency.   The deed which was executed and finally accepted by Loeb contained a covenant whereby the parties of the first part (the grantors) did jointly and severally covenant and agree to and with the party of the second part, his heirs and assigns, that the said parties of the first part are lawfully seised in their own right of a good, absolute, and indefeasible estate of inheritance in fee simple, of and in all and singular the above granted and described premises, with a general covenant of warranty.   There was a breach of this covenant of title at the time of the execution of the deed.   Neither of the grantors had a good, absolute, and indefeasible estate of inheritance in fee simple in the property.   They had, however, an interest in the property which, upon the death of their mother, would become such an estate as they had intended to convey; and, under the covenant of warranty, that estate would become vested in the grantee upon the death of the mother.   This being the condition of the title, Loeb accepted the deed in question, paying a portion of the consideration for the property in cash, and giving back a bond which was to become due upon the death of the mother in whom the life interest was vested, secured by a mortgage upon the property conveyed.   That bond ran to the children of the testator jointly.   There is no express provision in the bond as to the respective interests of the obligees, and it would be assumed, therefore, that they were entitled to share equally.   That, however, was a mere inference drawn from the absence of an express or implied provision of a contrary intention as between the obligees themselves; and it seems to me

that the question to be determined is whether or not the facts and circumstances surrounding the transaction show that such an intention existed as between the obligees.

It is quite immaterial to the obligor just what disposition the obligees should make as between themselves of the amount that was due under the bond; and we have to determine whether or not there was an express understanding or agreement as between the obligees as to the disposition that was to be made of such amount due, or, in the absence of an express agreement, whether the law implies an agreement as to the disposition, as between the obligees, that should be made of the amount due under the bond. As before stated, the sole consideration for the giving of this bond was the execution of the deed by the six children of the testator, which assumed to convey to Loeb the remainder of the property in question. The deed itself, when executed, conveyed no title to the premises. It did transfer whatever right the grantors had; and, upon the estate vesting in them by the death of their mother, it would, by estoppel, vest a valid title to the premises in the grantee, provided the children of the testator survived their mother. If all the children of the testator had died before their mother, no title at all would then have vested in the grantees, and the consideration for the bond would have wholly failed. By the death of Mrs. Schoeneman, her undivided one-sixth interest in the property vested in her children upon the death of the life tenant; and, by an express provision of the bond, the obligor became entitled to acquire the one-sixth undivided interest that became vested in Mrs. Schoeneman's children, and to deduct from the amount due upon the bond the amount necessarily expended by him in acquiring such title. The effect of this provision would, it seems to me, indicate an intention among the obligees that the obligee whose title failed, and whose conveyance furnished no consideration, should not share in the amount due under the bond; especially where it apeared that, by the breach of a several covenant in the deed, the obligee or her estate became liable to the obligor for the damages sustained in consequence of a breach of the covenant of title. The situation that existed upon the death of Mrs. Schoeneman before her mother was that her estate was liable to Loeb for the damages that he had sustained in consequence of a breach of her covenant of title. It is conceded by all the parties that those damages consisted of the amount that he was compelled to pay to acquire the title of her children to the undivided one-sixth of the property which she had assumed to convey to him. Under the provision of the bond, he had acquired that interest by purchase from her children, and was entitled to deduct the amount that he had paid to acquire such title from the amount due upon the bond, and that bond was correspondingly reduced. Thus, his claim against the estate of Mrs. Schoeneman was satisfied by deducting from the amount due upon the bond the amount which, under the bond, she would have been entitled to receive, and, in addition thereto, an amount equal to $700 from the share that each of the other obligees would be entitled to receive. That amount Loeb

paid, and deducted from the amount that otherwise he would have had to pay to each of these obligees; and it seems to me quite clear that each one of the obligees became subrogated by such payment, which Loeb enforced in pursuance of an agreement that was binding upon Mrs. Schoeneman, to the right to enforce the covenant made by Mrs. Schoeneman that she had a good and indefeasible title in fee simple to the premises in question. That right to enforce such covenant, having passed by subrogation to each of the obligees of the bond to the extent of their interests in the bond, entitled them to claim from the estate of Mrs. Schoeneman the amount that each of them would have been entitled to receive from Loeb in the event that Mrs. Schoeneman had outlived her mother; and thus her conveyance to Loeb would have become operative.

No case exactly in point has been cited to us, but it seems that the principle established in the case of Pease v. Egan, 131 N. Y. 272, 30 N. E. 104, applies. There a testator had left certain real estate to his wife for life, with the remainder to his children upon the youngest child attaining the age of 21 years. That real estate was subject to a mortgage. He also left certain personal estate, to which the children would become entitled absolutely upon the death of their mother. The widow, in order to protect the real estate, paid out of this personal estate the mortgage, causing the same to be satisfied of record. One of the children died before the youngest child arrived at the age of 21, and the question was whether or not this mortgage upon the real estate passed by way of subrogation to the representatives of the deceased child, so as to entitle them to enforce the lien of the mortgage against the real estate. The court say:

"The daughter, in fact, has discharged a debt against another, and in the discharge did not act as a mere volunteer. This gives a right of subrogation. The fact that, if she had had an absolute interest in the property as devisee, she would have been bound to pay the mortgage to the exoneration of the testator's personal estate, does not make the mortgage debt her own. Whether she had any interest in its payment was based upon whether she was a devisee of the realty, and that was based upon a contingency which had not yet occurred; and, when she paid the mortgage or some part thereof, she took the chance of paying a debt for which she was not responsible, in order to preserve an estate her interest in which was contingent. When the contingency subsequently occurred which proved that she had no interest in the property which she had aided in preserving, justice demanded that her estate, which has thus suffered, should be treated as if it had paid the debt of another."

It seems to me that this condition exists in this case. These five surviving obligees to this bond have paid a portion of the debt of Mrs. Schoeneman's which was due to Loeb by virtue of the breach of her covenant of title in the conveyance in question. That was not a voluntary payment, but was a payment by Loeb, deducted from the amount due to these obligees under the provisions of the bond, which were binding upon Mrs. Schoeneman. Thereby these five obligees became subrogated to the claim that Loeb had as against Mrs. Schoeneman to enforce the breach of her covenant of title, and thus became entitled to compel Mrs. Schoeneman's children to make good to them the loss which they had sustained

in consequence of Loeb's enforcing the agreement to repay to him the amount due him from Mrs. Schoeneman in consequence of the breach of her covenant of title.

I think, therefore, that the judgment was right, and it should be affirmed, with costs.

VAN BRUNT, P. J., and WILLIAMS and PATTERSON, JJ., concur.

O'BRIEN, J. (dissenting). There is no serious dispute about the facts, which are clearly and succinctly stated in the opinion of the learned judge at special term, as follows:

"This is an action for the foreclosure of a purchase-money mortgage. The property originally belonged to one Jacob Lingsweiler, who died in June, 1882, leaving a will, which was admitted to probate in August, 1882. By this will, he devised the premises in trust to his executors, to collect and receive the income, and, after paying the necessary expenses of the estate, to pay the remainder of said income to the widow during her lifetime, and upon her death the real and personal property was directed to be divided and paid over equally between his children named in said will, or the issue of said children if any should die leaving issue. The six children of Jacob Lingsweiler, with the widow, their mother, conveyed the premises to the defendant Loeb, by two deeds, each deed containing the usual full covenants. One of the deeds was dated May 10, 1887, and was signed by the widow and the six children. After this deed was drawn, and before its delivery, on May 18, 1887, Frederick, one of the children, conveyed his share in the premises to his brother Charles. The deed of May 10th not being satisfactory to Loeb, as to its covenants, another deed, dated May 27, 1887, was drawn; the covenants therein being not merely joint, as in the previous deeds, but joint and several. Frederick did not join in this deed, having already, as above stated, conveyed his interest to his brother Charles. The two deeds were then delivered to and accepted by Loeb; and the mortgage and bond for $15,000 now in suit were given back to him. Julia Schoeneman, one of the heirs of Jacob Lingsweiler, died on the 17th of November, 1888, during the lifetime of her mother; and her estate is represented in this action by the defendant Hart, who succeeded her executor on the resignation of the latter. The mother, Elizabeth Lingsweiler, died on the 15th of August, 1893. Mrs. Schoeneman, the daughter, left three children, who were of full age at the time of the trial, and who are parties to this action. In the bond for $15,000, executed by Loeb at the time of the delivery of the deeds aforesaid, the following provision was inserted: 'And in the event that the title to any share or interest in the said premises shall fail, the said Solomon Loeb, his heirs, executors, administrators, and assigns, may make such reasonable payment as shall acquire the share or interest which shall so fail, and the amount so paid shall constitute a credit upon the principal sum provided to be paid by this bond; and in the event that the said Solomon Loeb, his heirs, executors, administrators, and assigns, shall not acquire such share or interest by payment, the reasonable value thereof shall constitute a credit upon the said principal sum, it being understood that any amount of which the said Solomon Loeb, his heirs, executors, administrators, or assigns, shall thus obtain the benefit, shall correspondingly reduce the liability of the said obligees on the covenants undertaken by them in their said deed, and that said covenants shall remain, and shall only remain, in force for any residue or liability upon their part.' Julia Schoeneman having died before her mother, as before stated, the defendant Loeb purchased the interest of her children in the property, and paid therefor the sum of $6,000, to which it is conceded that he is entitled as a credit upon the bond, thus reducing the principal sum to $9,000."

The legal questions presented are: (1) What, if any, was the interest of Julia Schoeneman in the property at the time she joined

in the conveyance to Loeb? (2) What was the interest of her children upon the death of the life tenant, she having died before that event? (3) Has Mr. Hart, as trustee or administrator of Mrs. Schoeneman, any interest in the unpaid $9,000? (4) Should he be required to pay to the plaintiffs the amounts by which their shares in the mortgage were diminished, by allowing a credit of $6,000 on the bond?

The two first of these questions involve a construction of the will of Jacob Lingsweiler. It will be noted that there is no gift made to the children, except by the direction to the trustees to divide and pay over the estate to the children on the death of the wife; and the rule applicable in such case is that the gift to the class includes only those of the class living at the time that the gift takes effect. The testator, apart, however, from any rule, expressly provided that it was only the children "then" (i. e. at the death of his wife, Elizabeth) surviving among whom his estate should be distributed. The direction to the executors is to divide among the children then surviving, "or issue of children, if any shall die leaving issue, such issue to take the parent's share."

In Re Baer, 147 N. Y. 348, 41 N. E. 703, where the will directed the trustees to apply the rents, etc., to the use of the life tenant, "and at her death to convey the remainder 'to the children and lawful heirs of my brother Harmon Hendricks, deceased, to share and share alike, per stirpes,'" the court said:

"Where final division and distribution is to be made among a class, the benefits of the will are to be confined to those persons who come within the appropriate category at the date when the distribution or division is directed to be made. * * * In such cases the gift is contingent upon survivorship, and, if it vests at all before the date of distribution, it is subject to be divested at the death before that time of a person presumptively entitled to share in the distribution. While this rule is sometimes made to yield to indications of a contrary intent in the will, yet it may be said to be a general rule, and there is nothing to be found in the will in question to prevent its full application. Moreover, there are not in this devise any words of direct and immediate gift to the children or heirs of the brother, but a direction that the trustees should convey to them at a future time, on a certain contingency. They were to take through the medium of a power in trust, and the time of the vesting of the interest was thus deferred in form, at least, until the time of distribution. It is a case, then, where, as the cases express it, 'futurity is annexed to the substance of the gift,' and warrants the application of the principle that where a future interest is devised, not directly to a given person, but indirectly through the exercise of a power conferred upon trustees, the devise is designed to be contingent, and survivorship at the time of distribution is an essential condition to the acquisition of an interest in the subject of the gift."

See, also, Campbell v. Stokes, 142 N. Y. 23, 36 N. E. 811.

It will thus be seen that the construction here given to the will is similar to that given to it by the learned trial judge, that Mrs. Schoeneman was vested with a remainder dependent upon the precedent life estate in her mother, and that, by her death prior to her mother's, her interest ceased, and her children succeeded as remainder-men under the will. The estate, however, of Mrs. Schoeneman and of all the other children of Jacob Lingsweiler, of which they became possessed at the death of their father, was, never-

theless, an estate which belonged to them, and was none the less alienable, even though liable to be defeated by the death of any of them before the death of their mother. Sheridan v. House, *43 N. Y. 569; Moore v. Littel, 41 N. Y. 66; Woodgate v. Fleet, 44 N. Y. 1; Ham v. Van Orden, 84 N. Y. 257; Surdam v. Cornell, 116 N. Y. 305, 22 N. E. 450. The complaint correctly alleges, therefore, that, under the will, the six children of Jacob Lingsweiler became vested with equal undivided remainders in fee in said premises, each undivided remainder being defeasible by the death of its owner before the death of Elizabeth Lingsweiler, the widow and life tenant; "that the interest of each child was alienable by such child; that, being so vested with such estates in remainder, said six children, together with their mother, the said widow of Jacob Lingsweiler, * * * by a written contract under their hands and seals, agreed with said Solomon Loeb to convey to him the said premises, for a consideration of $35,000"; that, pursuant to this contract, they did execute and deliver two deeds purporting to convey the said premises to said Loeb, with the usual full covenants; that by one deed they jointly covenanted, and by the second they jointly and severally covenanted, that they "were lawfully seised in their own right of a good, absolute, and indefeasible estate of inheritance in fee simple of said premises," and jointly and severally covenanted with said Loeb "that they had good right, full power, and lawful authority to grant, bargain, sell, and convey said premises," and jointly and severally covenanted with said Loeb "that the said premises were free and clear of all former and other grants, titles, estates, and incumbrances," and jointly and severally covenanted "with said Loeb, in the usual form, that they would warrant and forever defend the said premises unto said Loeb, against all persons lawfully claiming the same." Reading these covenants in the light of the conditions inserted in the mortgage and bond, it is evident as to what was the intent of the covenantors, and in what sense they were understood by the covenantee, Loeb, because, not only did they not have at that time an "indefeasible estate of inheritance in fee simple," but they knew it, and Loeb knew it, and the provision was made that, in the event of any of the children who were covenantors dying before the life tenant, then Loeb should purchase the interest which had thus passed to the issue of the child dying, and provision was also made for his being reimbursed for any moneys so paid, and for crediting the same upon the principal sum due on the mortgage. That this was the understanding of all the parties is further evident from the fact that Loeb had taken a lease of the premises for 21 years, and the deeds to him were expressly subject to such lease; and, in addition, the mortgage, by its terms, was not payable until the death of the widow and life tenant.

Having thus in view the situation of the parties to each other respectively, it is not difficult to determine just what was the contract and the purpose of these several instruments. Loeb wanted to purchase the property, and the others were willing to sell; but there was the one difficulty in the way, that, as the interest of

any child was liable to be divested by his or her death before the life tenant, provision had to be made to protect Loeb for any amount that he might be obliged to pay to secure the interest so failing. And, as a result, we have the lease, the two deeds referred to, and the mortgage and bond, with similar provisions to protect Loeb, one of which extended the time for the payment of the principal of the mortgage until the death of the life tenant, when, only, it could be determined who had an indefeasible estate in fee simple in these premises. This estate of the children of Jacob Lingsweiler, which was a vested, alienable, future estate, and a separate and distinct interest from that of the contingent remaindermen, was what was purchased by the defendant Loeb, and conveyed to him by the two deeds. This estate the children had a right to sell, and Loeb to purchase; for, though it was but a future estate, whether vested or contingent, it was "alienable in the same manner as an estate in possession." 1 Rev. St. p. 722, etc.; 3 Rev. St. (Birdseye's Ed.) pp. 2525–2530, §§ 13, 35. Having, therefore, an estate or interest to sell, the consideration thereof, including the bond and mortgage, became at once the property of these six children.

Unquestionably, Loeb understood that he was not purchasing all the outstanding estates in the land, and that the children, one and all, understood that they were selling their own interest, and did not purport to sell, and could not sell, the interest of any contingent remainder-men, and hence the agreement in regard to the reduction of the mortgage. This agreement embodied in the bond is that, in "the event that the title to any share in said premises shall fail," Loeb should make such reasonable payment as should be necessary to acquire a good title, and that the amount of money so paid should be credited upon the bond and mortgage. This is the whole agreement. The six children might have further agreed that in case any of them should die before their mother, and Loeb should acquire, by purchase, the interests of those who would then take an estate in possession in the lands on the death of the widow, and thus become entitled to a credit on the bond and mortgage, then the estate of the child so dying should not have any interest in the bond and mortgage, and should repay to the surviving children the amount by which the said bond and mortgage was reduced. It was upon the theory that such an agreement should have been made, and because entirely equitable, that the learned trial judge reached the conclusion that the defendant Hart, as trustee of Mrs. Schoeneman's estate, had no interest in the bond and mortgage, and should repay to the plaintiffs the amount which they lost by the payment which Loeb had to make.

The difficulty with this conclusion is that there is no evidence of any such agreement having been made between the parties, and the mortgage and bond are payable to all the children by name, respectively, and to "their executors, administrators, or assigns." Moreover, the cash purchase money was paid to the children; and it would be just as equitable for the estate of Mrs. Schoeneman to pay back to the others what she received of this cash as to take

away from her estate the legal interest which she undoubtedly had in the bond and mortgage. What Loeb purchased and paid cash and gave a mortgage for was the estate which the children then had in the property; but having been undoubtedly advised of, and having in mind, the contingency of the death of one or more or all of these children before their mother, provisions were inserted in the bond and mortgage, and covenants in the deed, which were intended to protect Loeb. He took the risk of the children dying, and bought all that he could then purchase, and gave therefor the cash and mortgage to those who sold him all they then had to sell. The latter then acquired, for the interests which they parted with, as good a legal title to the bond and mortgage as they did to the cash purchase money. The agreement between themselves was that they should all stand equally, all receive an equal amount of the proceeds, all be equally interested in the mortgage, all be liable on the covenants in the deed, and that any reduction of that liability should inure to the benefit of all. Such an agreement is not one which a court of equity would be warranted in setting aside, even though we conclude that it would have been fairer, in view of what has transpired, if some provision had been made by which, upon the death of one of the children, her interest in the mortgage should have ceased, and that the others should be entitled to be reimbursed for anything that Loeb should be required to pay to secure the interest which by death thus failed.

It is urged, however, that the covenants into which Mrs. Schoeneman entered with the others are sufficient to justify the court in withholding from her estate any participation in the mortgage, and in compelling it to make good to the others what they have lost by reason of her death and consequent failure of title; that while conceding that Mrs. Schoeneman had, and that Mr. Hart now has, the legal title to a one-sixth interest in the bond and mortgage, he should, in equity, be debarred from ever asserting or enforcing such ownership. The argument presented to support this view is that, by their confirmatory deed to Loeb, the children jointly and severally covenanted that they were seised of the premises in fee, with full power and authority to convey them; that as it is now found that Mrs. Schoeneman was not seised of her one-sixth, and could not and did not convey it, it became necessary for Loeb to pay, and he did pay, the sum of $6,000 for such interest; that, by the credit for this amount given to Loeb in this action, the five surviving children have paid it, and discharged the obligation of their covenant; and that since it was the title to the share of the sixth joint and several obligor, Mrs. Schoeneman, that failed, the five who paid are entitled to be subrogated to the right of Mr. Loeb, and are entitled to recover $3,500, the difference between the $6,000 damages payable by Mrs. Schoeneman and her one-sixth of the $15,000 mortgage. And in this connection the principle is invoked that "if, as between joint debtors, it has become the duty of one of them to pay the entire debt, the others, if they shall be compelled to pay it, shall be subrogated to the securities and means of payment held by the mortgagor against the former, just as if

they had been sureties of the former eo nomine." Sheld. Subr. § 170.

In the principle invoked, it will be noted that it is applicable only to joint debtors in a case where it has become the duty of one to pay the entire debt, which is not this case; nor do we think the principle of subrogation applicable. The obligation, which was joint and several, was concededly discharged by the payment of the $6,000; and it was provided in the bond that any payment so made should go in reduction of the liability, and inure to the benefit of all. After the purchase of the estate of the Schoeneman children, Loeb acquired perfect title, and he did this by purchasing from them at an agreed price; and there is therefore no liability of any one on these covenants of warranty. But, granting that such liability did exist, still the reduction of such liability is shared equally by all the children. The covenants in the deed, moreover, were to the defendant Loeb, his heirs and assigns, and were not covenants in favor of the co-covenantors, as against each other. Neither Loeb nor any one claiming under or through him is here asking for the enforcement of any of these covenants, or claiming damages for any breach of them. The intent of making them joint and several was to enable Loeb, upon a breach, to recover against all jointly, or against any individual covenantor. This, however, does not make them effective as between the co-covenantors, nor is there any language in any of the instruments in which a covenant can be spelled out on the part of Mrs. Schoeneman to her co-covenantors creating any obligation in their favor against her estate. Much of the obscurity concerning the real legal relations of the parties is due to the fact that the $6,000 was paid to the children of Mrs. Schoeneman, who, by her will, will be entitled to receive what her administrator may recover in this action, as part of the proceeds of the mortgage; and it is this feature of their receiving more than any of the others that inclined the court to seek some principle upon which it could debar Mrs. Schoeneman's estate from participating in the mortgage, and to find a way to compel it to pay what the other children of the testator have lost by reason of the payment which Loeb was obliged to make to Mrs. Schoeneman's children. I think, however, that if, instead of regarding such payment as having been made to the latter, we were to substitute entire strangers, and keep entirely separate and distinct the legal entities, viz. the administrator representing the estate of Mrs. Schoeneman, and the third parties who, by her death, had acquired the interest which Loeb had purchased, we can divest ourselves of the equitable views which are necessarily forced upon us when considering this as a contest between Mrs. Schoeneman's children and the surviving children of the testator.

The same consideration that supports Mrs. Schoeneman's title to the mortgage supports her title to the cash purchase money paid; and, if her estate is to be mulcted in damages by reason of her death and failure of title, she should not only be deprived of any interest in the mortgage, and pay what the others lost by reason of Loeb's payment for the outstanding interest, but, by parity of rea-

soning, her estate should also be required to repay the proportion of the cash purchase price which she received upon the delivery of the deed. I think it improbable that Mrs. Schoeneman ever intended to enter into an agreement which would be fraught with such consequences to her estate. At the time the property was sold, there were the interests of the life tenant and of the six children to be transferred. Assuming, for the purposes of calculation, that the interest of the life tenant in the cash purchase money of $20,000 then paid was $5,000, it would leave to be divided among the six children $2,500 apiece. If we could assume, therefore, that the contract was not to sell, for $2,500 and her interest in the mortgage, what she then had, but was an agreement by which she was to guaranty her co-covenantors for a failure to outlive the life tenant, then, as it has turned out, her estate would be entitled to no interest in the mortgage, and would be liable for $3,500, the difference between her interest of $2,500 in the mortgage and $6,000 which Loeb paid for the outstanding interest to her children, and, in addition, her estate would be liable for the cash purchase money which she received. Or, if we assume that her estate would be allowed to retain the cash paid her, the net result of such an arrangement to Mrs. Schoeneman would be that her future interest in the premises, which was concededly a real one, was conveyed to Loeb, and for such interest Mrs. Schoeneman's estate was not only to receive nothing, but, in addition, was to pay damages as the result of the transaction. That no such agreement in terms was made is conceded, nor can I see any way in which it can be implied from the documents which the parties used to effectuate their then intention; and it would be giving a forced and unreasonable construction to the covenants in the deed, in the light of what was intended to be effectuated between the parties, to hold that, by the transaction, it was intended that Mrs. Schoeneman was speculating upon her outliving the life tenant, and was not only wagering the interest which she then had in the property, and which was valuable,—not only risking the increase which years might add to its value, and which had been conveyed to Loeb,—but, in addition, she wagered that, if she did not survive, her estate was to pay the resulting damage. Such an assumption is much more inequitable and unreasonable than the one which I think was undoubtedly made, by which the parties sold their then interest for a consideration in which all participated, and from which all benefited, and in which all assumed an equal liability.

To summarize, therefore, I think that, in selling to Loeb, Mrs. Shoeneman acquired an equal interest with the others, not only in the cash purchase money paid at the time, but also in the purchase-money mortgage now in suit, and that the liability created by the covenants and the provisions of the bond was, by the agreement which they made, shared by all, and has been discharged by the payment of $6,000; that the covenants run to Loeb, his heirs and assigns, and were intended to protect him, and were not intended to protect one covenantor as against the others; that the theory and arguments advanced for holding Mrs. Schoeneman's estate

liable to make good to the others what they have lost by the payment of the $6,000 would be equally effectual in charging her estate for the cash purchase price which she received at the time of the delivery of the deeds to Loeb; and thence the conclusion would follow that, for an interest which she could sell and convey, she was not entitled to receive anything.

The decision is in the short, new form allowed by section 1022 of the Code of Civil Procedure, and although the general exception prescribed by that section was not taken, but specific exceptions to portions only of the decision, leaving material parts not excepted to, I think they were sufficient to raise the question as to the interest of Hart as trustee in the mortgage.

Having reached a different conclusion from the learned trial judge, the portions of the judgment appealed from should be reversed; and Hart, as administrator or trustee, should be awarded a one-sixth interest in the balance of $9,000 due on the mortgage, and the interests of the other parties should be correspondingly reduced, and the provision for the payment by Hart of any portion of the costs below stricken out, with costs of this appeal to the said Hart.