## JEWELL v. GRAHAM.

Court of Appeals of District of Columbia.

Submitted January 4, 1928. Decided February 6, 1928.

Petition for Rehearing Denied February 25, 1928.

No. 4573.

**1. Wills ⊚⇒439—Intention of parties prevails, in exposition of wills, if not inconsistent with law.**

The first and great principle in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his last will, shall prevail, if not inconsistent with settled rules of law.

**2. Wills ⊚⇒524(6)—Under will devising life estate with remainder to children and descendants, legatee of deceased child, who died before life tenant, took no interest in remainder.**

Under will devising life estate, with remainder to children and descendants living at death of survivor of life estate, legatee under will of deceased child received no interest in remainder, whether it be considered as vested or contingent, since, if vested, it was subject to defeasance by condition subsequent, namely, death before that of surviving life tenant.

**3. Wills ⊚⇒636—Remainder, devested by death of remainderman, did not pass under remainderman's will.**

Where remainder was devested by death of remainderman, any right which legatee under will had thereto was devested.

**4. Wills ⊚⇒498—In construing wills, the words "issue" and "descendants" must be taken as synonymous.**

In construing wills, the words "issue" and "descendants" must be taken as synonymous.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Descendants; Issue (Descendants).]

**5. Wills ⊚⇒636—Under will devising real estate, with remainder to children of life tenants, legatee under will of deceased child took no interest.**

Under will devising real estate for life, with remainder to children of life tenants, with provision in case of default of children of issue that remainder should go to heirs at law, legatee of child dying before life tenant took no interest therein, whether the remainder be considered as vested or contingent.

Appeal from the Supreme Court of the District of Columbia.

Application by Edmund H. Graham, administrator d. b. n. c. t. a., for a construction of the last will of William E. Clark, deceased. From a decree therein, John D. Jewell, as residuary devisee and as executor of the will of Elizabeth C. Stockdale, deceased, appeals. Affirmed.

24 F.(2d)—17

G. C. Gertman, J. W. Latimer, W. C. Clephane, H. P. Blair, and Arthur Hellen, all of Washington, D. C., for appellant.

E. C. Brandenberg, L. M. Denit, and G. W. Offutt, all of Washington, D. C., and Shippen Lewis, of Philadelphia, Pa., for appellee.

Before MARTIN, Chief Justice, ROBB, Associate Justice, and GRAHAM, Presiding Judge of the United States Court of Customs Appeals.

GRAHAM, Acting Associate Justice. William E. Clark died testate, in the District of Columbia, on July 12, 1895, He left, surviving him, Susan Frances Clark, his widow, James E. Clark, a brother, Pattie C. Stockdale and Mary P. Logan, sisters, and Nat McGiffin, Abner McGiffin, John McGiffin, and Emma C. McLean, nephews and a niece, children of a deceased sister, Sarah McGiffin. By his will, which was duly probated in the District, he attempted to dispose of all of his estate. Distribution thereof was duly made by his executors, except that portion specifically provided for in a part of section I and in section IX of the will, where certain life tenancies with remainders over were created, as will more fully appear by reference to the provisions in question, hereinafter quoted.

Susan Frances Clark, the surviving life tenant named in said testamentary provisions, died on the 12th day of April, 1926. Prior to her death, all the estate named in said sections I and IX had been converted into money and reinvested, and, at the time of her death, consisted of personalty of the approximate value of $300,000. The said James E. Clark died October 3, 1896, without issue surviving. The said Pattie C. Stockdale died May 28, 1904, leaving her surviving, as her sole and only heir at law, Elizabeth Stockdale, who was born March 22, 1857, and who died June 19, 1923, without issue, but testate, naming John D. Jewell, the appellant, in her last will and testament, as residuary legatee. The said Mary P. Logan died intestate, October 26, 1911, leaving as her sole and only heirs at law her grandchildren, Mary Helen MacCoy, Jean MacCoy Allis, Marjorie N. MacCoy, and W. Logan MacCoy, who were the children of said Mary P. Logan's only child, Emma Logan MacCoy, who died September 29, 1906.

Upon the death of Susan Frances Clark, Edmund H. Graham was appointed administrator de bonis non cum testamento annexo

of the estate of said William E. Clark. On October 29, 1926, as such administrator, he filed in the Supreme Court his petition for a construction of said sections I and IX of said last will of William E. Clark, averring that there were contesting claims between the said John D. Jewell and the MacCoy heirs, under said sections of said will; that said Jewell claimed to be entitled to a distributive share of one-half of the remainder arising from said sections, while the MacCoy heirs were laying claim to the whole thereof; and praying for a construction of said sections. On this petition, issues were joined between the contesting parties, and on February 23, 1927, a decree was entered in said cause, finding that the estate held by said administrator was distributable to said MacCoy heirs and that said Jewell, as legatee, had no interest therein. From this decree Jewell prayed an appeal, which he perfected February 26, 1927.

On November 23, 1927, a stipulation was filed in this court, which stipulation, inter alia, recited that Abner McGiffin and Emma C. McLean, children of Sarah McGiffin, a deceased sister of said William E. Clark, were living at the time said stipulation was filed; that John McGiffin, another child of said Sarah McGiffin, deceased, died before the death of said Susan Frances Clark, without issue; that Nat McGiffin, the remaining child of said Sarah McGiffin, died before the death of said Susan Frances Clark, leaving the following as his only heirs at law: Elizabeth M. Cheney, Grace Cheney, Thomas McGiffin, William McGiffin, and Don McGiffin, all of whom were living at the time of filing said stipulation. Said stipulation further provided that said McGiffin heirs might be made parties in said cause, together with other parties thought necessary to present all questions involved, and might file such pleadings in this court as were necessary to present their respective claims. This stipulation was approved by this court, and thereafter the said McGiffin heirs filed their petition herein, claiming that, by reason of the default of children of either said James E. Clark or Pattie C. Stockdale, at the time of the death of said Susan Frances Clark, two-thirds of the property comprising the residuary estate provided for in said section I, and one-half of the residuary estate provided for in said section IX, became intestate, and that said McGiffin heirs, as heirs at law of said William E. Clark, deceased, were entitled to one-third of the distributable estate under said section I and one-fourth of the distributable estate under section IX, and praying relief accordingly.

The relevant portions of said sections I and IX are as follows:

"I. I also give and bequeath all of the capital stock of the United States Electric Lighting Company (a corporation having an office and now carrying on business in said city and District), which I now own, and which I may own at the time of my death; also all of the capital stock of the Central National Bank of Washington City (a corporation also having an office and carrying on business in said city), which I now own and which I may own at the time of my death, except, however, the ten (10) shares of the capital stock of said bank, which I hereinafter give to my only brother, James E. Clark, to my said wife, to hold use and enjoy during her life; remainder upon her death to be held, used and enjoyed by my said brother James, and my sisters, Pattie C. Stockdale and Mary P. Logan, should they all survive her; if not, for such of them as may be then living, for and during their lives and the lives of the survivors and the survivor of them; with remainder upon the death of all three (3) of them, to such of their children and descendants as may be living at the death of the survivor of them, their executors, administrators and assigns, as tenants in common, share and share alike, so that such children and their descendants will take by representation and in right of their deceased parent and parents, respectively, and not per capita, and in default of any such children or descendants, then the said stocks shall go to and be held by my next of kin according to the laws governing the distribution of intestates' personal property now in force in the District of Columbia, their executors, administrators and assigns; should my said brother or but one of my said sisters survive my said wife, then the whole beneficial use in said stocks shall be enjoyed by that one for his or her life; but should neither be alive at my wife's death, the same shall then go absolutely, to such of the children and descendants of my said brother and of my said sisters as may then be living, they to take by representation as aforesaid, and in default thereof, to go to and be held by my next of kin, as aforesaid."

"IX. I give and devise all of those three (3) certain and adjoining tracts, or parcels, of land, situate, lying and being in the county of Fairfax in the state of Virginia, now in my use and possession as one farm, generally known as Hayfield, as enlarged by me, con-

taining in the aggregate eight hundred and fourteen (814) acres of land more or less, that is to say: * * * To my said wife and brother, if both survive me, for and during their joint lives, and the life of the survivor of them, but should only one of them survive me, then to the one living at my death, for and during his or her life; remainder after the death of such survivor unto the use of my sisters, Mary P. Logan and the said Pattie C. Stockdale, if both be then living, for and during their joint lives, and the life of the survivor of them, but if only one of my said sisters be living at the time of the death of the survivor of my said wife and brother, as aforesaid, then to the one living at the death of such survivor, for and during her life.

"Upon the death of the survivor of my said two sisters, or in the event that neither be living at the termination of the life estates in said farm so devised to my said wife and brother, or in the further event that neither my said wife nor brother nor either of my said two sisters survive me, it is my will that said several tracts of land and improvements and appurtenances so comprising my said farm, in said county of Fairfax, shall go, and I do hereby give and devise the same to the children of my said two sisters and the issue of such children as may then be deceased, their heirs and assigns forever, in equal shares, as tenants in common, so always, however, that such issue of a deceased child or children, if any, shall take equally among them such parts or shares only which his, her, or their, deceased parent or parents would have taken, if living, per stirpes and not per capita. And in default of such children or issue thereof, of my said two sisters, or of either of them, living on the happening of either of the events aforesaid, then I give and devise the said several tracts of land, so comprising my said farm, unto and to the use of my right heirs at law, their heirs and assigns forever."

It is contended here by appellant that the remainders created by said sections I and IX became vested in Elizabeth Stockdale upon the death of said William E. Clark, that such remainders were alienable in any of the ways provided by the statute of uses, and that the appellant, as legatee, took such remainder upon the death of Elizabeth Stockdale, with the right to possession, only, deferred until the death of the last surviving life tenant. On the part of appellees the MacCoy heirs, it is contended that the remainders created by said sections are contingent, or, if vested, were subject to a defeasance, by the failure of the remainderman, Elizabeth Stockdale, to survive the life tenancies. The claim of the issue of Sarah McGiffin, deceased, has already been outlined.

[1] It has been well said that the first and great principle in the exposition of wills, to which all other rules must bend, is that the intention of the testator expressed in his last will shall prevail, if not inconsistent with settled rules of law. Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322. This court has always closely adhered to that rule and has only called upon fixed and arbitrary rules of construction when it found it necessary to do so because of the ambiguity of the language used by the testator. Montgomery v. Brown, 25 App. D. C. 490; McAleer v. Schneider, 2 App. D. C. 461; Rutherford v. A. S. & T. Co., 56 App. D. C. 214, 12 F. (2d) 155. In Cruit v. Owen, 25 App. D. C. 514, this court gave its approval to the familiar rule of construction, so clearly stated by the author in Jarman on Wills, vol. 2, pp. 770–771 (6th Ed.), that the interpreter of a will should place himself in the position occupied by the testator when he made the will, and from that standpoint discover what was intended. The Supreme Court has adhered to the same guiding principle. Blake v. Hawkins, 98 U. S. 315, 25 L. Ed. 139; Robison v. Orphan Asylum, 123 U. S. 702, 8 S. Ct. 327, 31 L. Ed. 293.

With these preliminary observations, we shall examine the will before us. It is a very elaborate and inclusive instrument, containing 14 sections, each drawn with scrupulous care to dispose of some portion of the testator's estate. The instrument is prefaced with the parenthetical statement of the testator that he intends, by said will, to dispose of all his "property and estate."

The testator left, at his decease, a very considerable amount of real estate, located in the District of Columbia and in Fairfax county, Virginia, and personalty valued, approximately, at $375,000. By his aforesaid will he attempted to dispose of all this property to his widow, his brother and sisters surviving at the time of his death, and to the then living children of his deceased sister, Sarah McGiffin. It will be observed that Elizabeth Stockdale (through whom appellant claims as legatee), a niece of the testator and daughter of Pattie C. Stockdale, was living at the time of the execution of said will and at the time of the decease of testator. Although living, she was not mentioned in said will as beneficiary, although,

as we have seen, his nephews and nieces the McGiffins, whose mother was deceased, were so provided for. The natural inference from this is that the testator intended that the direct and immediate recipients of his bounty should be the ones he had expressly mentioned in this will; the residuary provisions being intended only to care for what remained after these immediate and direct legatees had obtained all benefit and use which they might from and of, his estate. A consideration of the whole language of the will leads to the inevitable conclusion that the testator was intending to confine his beneficiaries to the class of his descendants whom he named, with remainders over to those who might survive certain events, and that it was no part of his plan to permit strangers to his blood to take, or that any part of his estate should be intestate. Doubtless the experience of the testator had been such as to demonstrate to him how this best might be done, to conserve his estate and direct his bounty where it would most effectually accomplish the objects he had in mind.

The provisions of section I, in question here, illustrate the care used by the testator in attempting to accomplish this object. Here the testator bequeaths certain corporate stock to his widow for her lifetime. This is his primary object, that his widow shall be provided for. The bank stock in question was inventoried at $300,000 upon the death of the widow, and it is apparent that testator knew that the income of the same, together with the other property devised to her by other sections of the will, would be ample provision for her support.

Secondarily, the testator desired to provide an income for his brother James E. and his sisters Pattie C. Stockdale and Mary P. Logan, should they survive his widow, and hence he provided that after his widow's decease, the balance of the property devised by this section should be used and enjoyed by them jointly, and by the survivors and survivor until the last one had died. Having thus carved out certain life estates, he then disposes of the remainder in these words:

"With remainder upon the death of all three (3) of them, to such of their children and descendants as may be living at the death of the survivor of them, their executors, administrators and assigns, as tenants in common, share and share alike, so that such children and their descendants will take by representation and in right of their deceased parent and parents, respectively, and not per capita. * * *"

Not content with this apparently plain and unambiguous provision, and mindful of the fact that, in the course of nature, his widow might survive his brother and sisters, an event which might possibly not have been included in the language already used, he says:

"Should my said brother or but one of my said sisters survive my said wife, then the whole beneficial use in said stocks shall be enjoyed by that one for his or her life; but should neither be alive at my wife's death, the same shall then go absolutely, to such of the children and descendants of my said brother and of my said sisters as may then be living, they to take by representation as aforesaid."

Obviously, the first sentence of the last above quoted excerpt is but a repetition of a part of what the testator said in the first above quoted portion. The last sentence, however, provides for a contingency not theretofore expressly provided for, namely, that the widow should survive the brother and sisters. In both contingencies the *"children and descendants"* living at the time of the death of the surviving life tenant shall take the remainder. It will be observed that here the testator did not use the word "heirs," but the words "children and descendants." Following all this, the testator provided for the last contingency, namely, that when the last life tenancy fell in, if there were no "such children or descendants"—that is, no children or descendants then alive—the residuary remainder should go to and be held by his next of kin.

Here is a general plan of distribution, which follows the fund into every possible condition which the laws of nature impose. It is impossible to consider this section of the will of testator, and fail to reach the conclusion that he intended to bequeath the remainder in his property, mentioned in the particular part of the section in question, to the direct descendants of his brother James and his sisters Pattie and Mary, who were living when the life tenancies terminated, and to no one else.

[2] If this was the intent of the testator, plainly expressed, is there any rule of construction which prevents the carrying out of such intent? We know of none. It is argued by appellant that this section of the will created a vested remainder under the authorities, and that such a vested remainder was alienable by will. As we view the matter, it is unimportant whether the remainder be treated as contingent or vested. If it be

contingent, the contingency happening before the remainder could vest, nothing passed to appellant as the legatee of Elizabeth Stockdale, deceased. If the remainder be treated as vested, it was subject to a defeasance by a condition subsequent, namely, the death of Elizabeth Stockdale before that of the surviving life tenant, Susan Frances Clark. Richardson v. ·Penicks, 1 App. D. C. 261; Craig v. Rowland, 10 App. D. C. 402; Fields v. Gwynn, 19 App. D. C. 99; Cruit v. Owen, 25 App. D. C. 514; Johnson, v. L. & T. Co., 33 App. D. C. 242; Green v. Gordon, 38 App. D. C. 443; Doe v. Considine, 6 Wall. 458, 18 L. Ed. 869.

[3] Elizabeth Stockdale having died before her grandmother, the life tenant, her legatee could take no more than she took. If it be conceded that her remainder was a vested one, when her remainder· was devested. by her death, any right which her legatee had thereto was also devested. Richardson v. Van Gundy, 271 Ill. 476, 111 N. E. 494; Schwartz v. Rehfuss, 129 App. Div. 630, 114 N. Y. S. 92, affirmed in 198 N. Y. 585, 92 N. E. 1101; Lingsweiler v. Hart, 10 App. Div. 156, 41 N. Y. S. 862, affirmed in 159 N. Y. 543, 54 N. E. 1093; Fields v. Gwynn, 19 App. D. C. 99; Newton v. Hunt, 134 App. Div. 325, 119 N. Y. S. 3, affirmed in 201 N. Y. 599, 95 N. E. 1134.

In Fields v. Gwynn, supra, this court, in discussing an attempted conveyance of a reversionary interest by deed, said:

"What they could convey outright, they could also convey in trust by way of mortgage; and the mere uncertainty whether the estate so conveyed, may be hereafter divested, in whole or in part, by the death of one or all of the remaindermen ⸝before the determination of the preceding estate, would seem to furnish no sufficient ground for the refusal of foreclosure and sale in a seasonable and proper proceeding for that purpose, notwithstanding it might affect the price to be realized from such sale."

Section IX of the will is couched in somewhat different language. Certain lands therein named are given and devised to testator's wife and brother, "if both survive me," for their joint lives and during the life of the survivor, or, if only one survives the testator, then to that one, for life. After the death of the survivor of these two, the testator then provides a life estate for the same sisters named in the first section, namely, Mary P. Logan and Pattie C. Stockdale, for life, and for the life of their survivor, specifying with particularity the various contingencies which may arise, so as to provide for the accomplishment of these primary purposes. After the falling in of the various life estates, the remainder is devised "to the children of my said two sisters and the issue of such children as may then be deceased, their heirs and assigns forever, in equal shares, as tenants in common, so always, however, that such issue of a deceased child or children, if any, shall take equally among them such parts or shares only which his, her, or their deceased parent or parents would have taken, if living, per stirpes and not per capita." Then to provide for the last contingency which might arise, and to further clarify what he has already said, the testator adds: "And in default of such children or issue thereof, of my said two sisters, or of either of them, living on the happening of either of the events aforesaid," he devises the remainder to his "right heirs at law."

[4] The testator, obviously, has framed this section of his will in the technical language ordinarily employed in devises of realty, and the language, therefore, differs somewhat from that used in section I, where personalty is involved. As, for instance, he refers to the children of his sisters and their "issue"; whereas, in the first section, his language is "children" and their "descendants." However, the words "issue" and "descendants" must be taken as synonymous. Jarman on Wills, vol. 2, p. 106 (6th Ed.); Wyth v. Blackman, 1 Ves. Sr. 196; Davenport v. Hanbury, 3 Ves. Jr. 257; Adams v. Law, 17 How. 417, 421, 15 L. Ed. 149; Robeson v. Cochran, 255 Ill. 355, 99 N. E. 649. Other similar differences in language are observable, but which throw no particular light upon the interpretation of the section.

It is evident, also, from this section of the will, that the testator intended that those descendants of his two sisters, Mary P. Logan and Pattie C. Stockdale, who were alive at the time of the death of the surviving life tenant, should go into immediate possession of the remainder. He states that if any one of these children or descendants be alive at the time of the death of the last life tenant, the remainder shall vest in possession in them at that time. Only in case there be no such child or descendant, shall the residuary devise to his right heirs be effective. It would seem to follow, logically, that if one living descendant would· prevent the application ·of the residuary clause, it would be because such living descendant could take both fee and possession.

In the case at bar, appellant claims as

legatee of Elizabeth Stockdale, who died before the expiration of the life tenancies. Assume for the argument, that, upon the termination of the life tenancies provided by said section IX, there had been no living descendants of Pattie C. Stockdale and Mary P. Logan. Under the language used by the testator and above quoted, would the residuary devise not have then become effective? For the testator had expressly provided that if no children or issue were then alive, it should apply. By no method with which we are familiar could it be held that the appellant came within the class of "children" or "issue." [5] So here, as before, upon the language of section I, we observe that whether the remainder in Elizabeth Stockdale be considered as vested or contingent, upon her death before the event upon the happening of which her remainder or the right of possession thereto, vested in her, the right disappeared, and her attempted disposition of it by will was defeated.

What we have said disposes of the claim made by the children and descendants of Sarah McGiffin, the deceased sister. In our opinion no part of the estate became intestate.

The decree of the court below is therefore affirmed; costs to be paid from the assets of said estate.