Deidre Shane Robinson O'CONNELL, Appellant,

v.

The RIGGS NATIONAL BANK OF WASHINGTON, D.C., Trustee Under the Will of Joseph H. Curran, deceased, et al., Appellees.

No. 82–1343.

District of Columbia Court of Appeals.

Argued April 14, 1983.

Decided May 8, 1984.

Paul S. Davidson, Washington, D.C., with whom Sydney J. Butler, Richard A. Gladstone and Ronald Sales were on briefs, for appellant.

Matthew A. Kane, with whom Al Philip Kane, Charles V. Koons, Stewart M. Hurtt, Washington, D.C., were on brief, for appellees.

George E. Monk, Washington, D.C., for Riggs National Bank of Washington.

Before KERN and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

YEAGLEY, Associate Judge, Retired:

This appeal is from a judgment of the Probate Division of the Superior Court of the District of Columbia holding that appellant, an adopted adult, is not entitled to take as "issue" of her adoptive mother under the terms of a testamentary trust. Appellant, Deidre Shane Robinson O'Connell, now asserts on appeal that the trial court erred in (1) granting appellees' motion for judgment on the pleadings; (2) denying her motion for judgment on the pleadings; and (3) construing the testamentary trust as excluding adoptees from sharing as "issue" in the income and principal of a testamentary trust. We affirm.

Few facts are in dispute. Joseph Curran, testator, executed a will on September 22, 1926, and two codicils thereto on September 22, 1926 and April 4, 1928. The testamentary document contains a number of specific bequests to relatives and longtime faithful employees of the testator. The residue of the estate was placed in a testamentary trust. Under the terms of the trust, his two daughters were to receive the sum of $300 per month with incremental increases as circumstances changed and expenses increased. In the event that

his daughters married and had issue, the testator provided that the monthly income should be increased by $50. It was further provided that upon the death of his daughters, their issue were to receive all of the income and corpus of the trust provided they survived their mother and reached 21 years of age. In the event that his daughters died without issue surviving them, the remainder of testator's estate would pass to his next of kin.

Testator died on November 11, 1929, and his will and codicils were admitted to probate. Surviving testator were his wife, Susie E. Curran and two daughters—Mildred, age 26 and unmarried, and Ruth Curran O'Connell, age 24, married, but without children.[1] He was also survived by Amanda Curran Radcliffe, sister; Claudia Curran Davis, sister; Samuel A. Curran, brother; Mary B. Curran and Harold W. Curran, children of Francis M. Curran, deceased brother of testator; and Joseph M. Curran, child of Edward J. Curran, deceased brother of testator. Susie and Mildred Curran both predeceased Ruth O'Connell, leaving her as sole life income beneficiary of the testamentary trust. Ruth O'Connell remained childless until June 5, 1981, when, at the age of 76, she adopted appellant, a 34-year-old woman. Prior to the adoption, the two women were not related by either blood or marriage. Approximately two months after the adoption, Ruth O'Connell died, leaving appellant, her adopted daughter as her sole survivor.

Appellant filed a claim with Riggs National Bank, trustee of Joseph Curran's testamentary trust, asserting that she qualified as "issue" and "next of kin" under the terms of the trust and was therefore entitled to participate in the distribution of the trust corpus and income. Pursuant to this claim, Riggs petitioned the Probate Division of the District of Columbia Superior Court for instructions concerning the appropriate distribution of the residuary estate. Answers were filed by appellant and various blood relatives of Joseph Curran. The next of kin claimants, now appellees, include: Anna C. Sallee and Mary C. Curran, daughters of Samuel Curran, deceased brother of testator; Harold W. Curran and Mary B. Curran, children of Francis M. Curran, deceased brother of testator; and Joseph M. Curran, Jr. and Ruth C. Hall, children of Edward Curran, deceased brother of testator. Harold W. Curran and Mary B. Curran filed a separate motion for judgment on the pleadings seeking judgment that as "next of kin" they be entitled to final distribution of the trust under the terms of testator's will. Appellant filed a cross-motion for summary judgment. The trial court granted appellees' motion for judgment on the pleadings and denied the cross-motion. The court further ordered Riggs National Bank to pay unequal shares of the remaining trust corpus and income to appellees as next of kin. This appeal followed.

The present controversy revolves around the construction of subsection seven of the will which directs the distribution of the corpus and income of the trust to the "issue" of the life income beneficiary. Appellant insists that both public policy and traditional rules of construction establish her as the "issue" of Ruth O'Connell. We disagree.

A will is the personal expression of a testator's donative intent, and it is the intent of the testator which controls the disposition of his estate. The primary function of a court in construing the terms of a will is to determine the intent of the testator and to give that intention full effect unless it is contrary to law. *Riggs National Bank v. Summerlin*, 144 U.S. App.D.C. 31, 445 F.2d 201, *cert. denied*, 404 U.S. 851, 92 S.Ct. 91, 30 L.Ed.2d 91 (1971); *Pyne v. Pyne*, 81 U.S.App.D.C. 11, 154 F.2d 297 (1946). Thus, in order to ascertain what Joseph Curran intended by

---

1. At the time of testator's death, there was no person then in existence who qualified as "issue" of his daughters.

the term "issue," this court must place itself in the position of the testator at the time the will was drafted in 1926 and determine, if we can, from the four corners of the instrument, what his intention was with respect to who was to be the ultimate beneficiary of his estate.[2] *Jewell v. Graham*, 57 App.D.C. 391, 24 F.2d 257, *cert. denied*, 277 U.S. 596, 48 S.Ct. 559, 72 L.Ed. 1006 (1928).

The language of testator's will is simple and straight forward and his intention can be gleaned from the written instrument. *Cf. Johns v. Cobb*, 131 U.S.App.D.C. 85, 402 F.2d 636 (1968), *cert. denied*, 393 U.S. 1087, 89 S.Ct. 876, 21 L.Ed.2d 781 (1969). Testator's deep regard for his siblings is manifested by specific bequests of money made to them. The testamentary instrument also reveals his special concern for appellees, his niece and nephew, since he made a specific cash bequest to his sister-in-law, appellees' mother, to be used exclusively for their education.

■ The testator further provided that in the event one of his daughters died "without issue," the trust income would vest in his "next of kin." This contingency provision for cross-remainder demonstrates testator's intent to restrict the enjoyment of his estate to persons of his own bloodline. *See Riggs National Bank v. Summerlin, supra.*

■ Testator further sought to confine the enjoyment of his estate to family members by including a spendthrift clause. The terms of the clause forbade any beneficiary from alienating, assigning or mortgaging his trust interest. We hold that the

adoption proceeding in this case was clearly an attempt to alienate the income and principal of the trust fifty two years after Joseph Curran's death. We conclude that the provisions of the will reveal testator's overall donative scheme and indicate his intention to keep his estate for the sole benefit of only those individuals who are members of his own bloodline.

■ In support of her argument, appellant relies on *Johns v. Cobb, supra.* After careful consideration of the circumstances there involved, we are satisfied that *Johns* should not dictate the result in the case at bar. In *Johns*, the court was asked to decide whether an adopted child was entitled to take under two wills which left property to the "issue" of its adoptive mother. One will was executed in 1922, the other in 1944. The adoption took place in 1924. Both testatrices died several years following the adoption, without ever changing their wills. The United States Court of Appeals for this jurisdiction concluded that it could not find any language within the four corners of the wills to assist them in determining what the testatrices intended by the term "issue." As a result, the court supplied testator's intent by implication using current prevailing public policy on adoptees as its guide. Although it had not done so at the time the *Johns* wills were drafted, Congress in 1954 statutorily accorded adopted children in the District of Columbia all the inheritance rights of natural offspring. *See* D.C.Code § 16–312 (1981). It was by reference to this public policy that the court held that

---

**2.** It is also helpful to refer to the established meaning of the term "issue" at the time of the will's execution in 1926. At that time, it was commonly understood that "issue" referred only to natural offspring or "heirs of the body." *Allen v. Reed*, 57 App.D.C. 78, 17 F.2d 666 (1927). Furthermore, the law in effect in 1926 did not permit adopted children to inherit an intestate share of personal property either from or through their adoptive parents. *See* Statute of Descent, D.C.Code § 940 (1924); Statute of Distribution, D.C.Code § 373 (1924). Thus, an individual was said to have died without issue, even

if during his lifetime he had adopted a child. *See Noreen v. Sparks*, 103 F.Supp. 588 (D.D.C. 1952), *rev'd on other grounds*, 92 U.S.App.D.C. 164, 204 F.2d 56 (1953) (where it was held that persons adopted by a life tenant under a decedent's will, shall not be recognized as "issue" or "next of kin" for purposes of inheritance or distribution of a decedent's estate).

In light of the meaning of "issue" at the time of the will's drafting, it is abundantly clear that Joseph Curran intended only members of his bloodline, not adoptees, to benefit from his estate.

the adopted child should be included with the terms of testamentary gifts to "issue."

A pivotal factor which contributed to the outcome in *Johns* was that the court was unable to ascertain the testator's intent either through the terms of the will itself or through extrinsic evidence, and resorted to the current statutory authority before it. Fortunately, in the case before us reliable indices of the testator's intent are contained within the testamentary document. Thus, we are not compelled to reach the same result as in *Johns*.[3]

 Appellant also argues that since she is entitled to inherit both from and through her adoptive mother, she thereby is entitled to inherit from her adoptor's father, Joseph Curran. Relying on D.C. Code § 16–312 (1981), appellant contends that this statute is determinative since it was the law in effect at the time of Ruth O'Connell's death. The 1954 Adoption Statutes granting adoptees, be they minors or adults, the right to inherit through, as well as from the adopting parent, is not retroactive in a case such as this. *See Ball v. District of Columbia*, 104 Wash.D.L. Rptr. 1853 (September 27, 1976) (where it was held that this statute did not apply to the estates of persons who died before 1954 because the testators had no way of knowing such a law would be adopted and no opportunity to change their will). Thus, it has been held that a statute enacted after the death of the testator will not operate to alter or affect the intention of testator as expressed in his will. *Noreen v. Sparks, supra*, 92 U.S.App.D.C. at 165, 204 F.2d at 56. In light of testator's clear

desire to confine his estate to blood relatives, it would completely frustrate the testamentary scheme contemplated by Joseph Curran to allow appellant, an adopted adult, to inherit as "issue," and we decline to do so.

Appellant continues to argue that even if this court were to determine that Ruth O'Connell died "without issue," she is still entitled to the trust corpus and income as the "next of kin" of Joseph Curran. Testator's will provided that if the life income beneficiary died without issue, the estate would pass to his next of kin "to be determined by the Statute of Distribution then in effect, and not by the Statute of Descent." At the time of Ruth O'Connell's death in 1981, this jurisdiction permitted adopted children to inherit as if they were natural offspring, *i.e.*, from and through their adoptive parents. Thus, appellant asserts that the language of the will directs that 1981 law is controlling and that she should receive distribution of the estate as "next of kin." This assumption, however, is incorrect.

 The law in effect at the time of the death of testator is the law which must be applied in determining the testamentary intent. *Riggs National Bank v. Summerlin, supra*. "Law which becomes effective after the death of the testator is inapplicable in determining or affecting the testator's intent, on the obvious and undeniable logic that the testator cannot be presumed to have acted upon the basis of law not yet in being when he died." *Id.* At the time of execution of the will and testator's death, common law concepts of kinship

---

**3.** In a similar case decided subsequent to *Johns* the same court refused to follow that decision distinguishing that case as we do here. *See Riggs National Bank v. Summerlin, supra.* In *Summerlin*, testatrix died in 1930 leaving a will executed in 1929. The will provided that upon the death of her grandsons, their "issue" would receive the corpus of a testamentary trust. One grandson adopted a child in 1942, twelve years after testatrix's death. The same question faced the court: whether the adopted child was entitled to take as "issue." Unlike *Johns*, the *Summerlin* court found that it could ascertain testa-

trix's intent from the language and the conditions of the will. It concluded that the testatrix intended "issue" to mean those naturally born of her grandsons only, exclusive of adoptees. The court also noted that since the drafting of the wills and the death of the testatrix predated the 1954 amendments to the Adoption Statutes, it was necessary to consider only the law in existence at the time the will was drafted or at least at the time of the testatrix's death. We believe that this case is substantially on all fours with this appeal and conclude that its result is controlling.

were for the most part still in force in the District of Columbia and "next of kin" meant those individuals who were a testator's closest blood relatives. *Descent and Distribution,* 16 Am.Jur. 49 (1938). Therefore, it is apparent that when testator used the phrase "my next of kin," he was referring to blood relatives only. Since appellant is not a member of the class of Joseph Curran's blood relatives, she is not "next of kin" to the testator.

Accordingly, the order on appeal is hereby

*Affirmed.*