# BROWN *v.* WELLS.

WILLS; EVIDENCE; DECLARATION; ESTOPPEL; CLOUD ON TITLE.

1. While evidence of such extrinsic circumstances as the testator's relations to persons, or the amount, character, and condition of his estate, sometimes is admissible, in a suit for the construction of his will, to explain ambiguities of description, it is never suffered to enlarge or diminish the estate devised. (Following *Atkins* v. *Best,* 27 App. D. C. 148.)   Accordingly, in such a suit, evidence of declarations by the testator at the time he executed his will, that he intended to die intestate as to the reversion after the termination of the life estate created by his will, having been advised by its draftsman that such was the effect of the language used, is inadmissible.

2. It is always presumed that the testator used the words in which he expressed himself according to their strict and primary acceptation, unless, from the context of the will, it appears that he used them in a different sense, in which case they will be construed as from the will itself it is apparent he intended them to be construed. (Following *Crenshaw* v. *McCormick,* 19 App. D. C. 494.)

3. Where a testator makes a general devise of his real estate by a residuary clause, it will be presumed that he intended to dispose of such property to the full extent of his capacity. (Following *Galloway* v. *Galloway,* 32 App. D. C. 77, and *Taylor* v. *Leesnitzer,* 37 App. D. C. 356.)

4. The averment in a bill in equity for the construction of a will and the removal of an alleged cloud from title created by a conveyance in fee of real estate, in which it is claimed the grantor had only a life estate under the will, that the parties interested acquiesced for many years in a construction of the will giving such grantor only a life estate, has no force where it is not alleged that any one had changed his position by virtue thereof either by acting or failing to act.

5. Where a testator, after making specific pecuniary bequests to a nephew and a brother, gave the rents and profits of his real estate to a niece for life, appointing a trustee to take possession of the real estate and pay her the net rents and profits, and then, after making further specific pecuniary bequests and providing for the erection of a monument on his grave at a specified cost, provided that "after the foregoing shall have fully carried out and settled, I devise and bequeath the residue of my estate, real, personal, or mixed wherever

the same may be found, and which I may die seised of, unto" said niece, and it appeared that tl    personal estate was sufficient to pay all legacies and other charges, it was *held*, on a bill in equity by one of the heirs at law to construe the will and remove an alleged cloud on title created by the conveyance in fee of the real estate by the niece, that the niece took a fee in the real estate, and not a life estate, and the bill was dismissed.

No. 2978.   Submitted October 5, 1916.   Decided November 14, 1916.

HEARING on an appeal (specially allowed) from an order of the Supreme Court of the District of Columbia overruling a motion to dismiss a bill in equity for the construction of a will and to remove an alleged cloud on title created by the conveyance in fee of real estate by one of the devisees, who, it was alleged, took only a life estate in such real estate under the will.                                                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is a special appeal [by Thomas P. Brown] from a decree in the supreme court of the District overruling a motion to dismiss appellee's bill.

According to the averments of the bill, Adolphus G. Wells died in the District of Columbia in 1901, leaving *as heirs at law* and next of kin a brother, Christopher C. Wells, of Des Moines, Iowa, since deceased; a niece, Cecilia Hurxthal, of Chicago, Illinois; the appellee, Cassius L. Wells, son of said Christopher C. Wells; Carrie Hurxthal Archibald, a great-niece, daughter of said Cecilia Hurxthal; and Virginia Archibald, a great-great-niece, the daughter of said Carrie Hurxthal Archibald.

In clause 1 of his will the decedent directed the payment of his debts.   By clause 2 he bequeathed to his nephew Cassius L. Wells, the appellee herein, $1,000, and, by clause 3, $500 was left to his brother, said Christopher C. Wells.   Clause 4 reads as follows:

"I devise and bequeath to my niece Cecilia Hurxthal of Chicago, Illinois, the rents and profits of my two houses No.

489 and 491 on G street S. W. Washington, D. C., during her natural life, and hereby nominate and appoint William B. Yoder, of the city of Washington, D. C., as trustee to take possession and full charge of said property, rent the same, collect the rents, make all necessary repairs as in his judgment may be deemed best, pay all taxes and other lawful expenses, and remit the balance of rent, less 10 per cent commission on the gross amount, to said Cecilia Hurxthal."

By clause 5 the testator bequeathed to his great-niece, Carrie Hurxthal Archibald, $2,000, and, by clause 6, $400 to his great-great-niece, Virginia Archibald. By clause 7 he directed the cancelation of all evidence of indebtedness from his friend, Mr. Washington O. Berry. Clause 8 directed that he be buried in Rock Creek Cemetery, and provided for the erection of a monument at a cost of $1,000. Clause 9 reads as follows:

"After the foregoing shall have been fully carried out and settled, I devise and bequeath the residue of my estate, real, personal, or mixed wherever the same may be found, and which I may die seised of, unto my niece Cecelia Hurxthal of Chicago, Illinois, named as the beneficiary in item 4 hereof."

After the payment of the legacies and other charges there remained more than $5,000 in personalty to pass under the residuary clause. The bill as originally filed alleged that in addition to the personal property the decedent died seised of the two parcels of real estate mentioned in clause 4 of the will, "and none other." Later the bill was amended by striking out the words, "and none other."

The bill alleges that at the time of executing his will testator was seventy-eight years of age, and that it was made during his last illness; that he was a man without legal experience and without familiarity with the meaning and effect of legal phrases in the creation of estates by will or otherwise; that he relied upon the advice of Charles T. Yoder, who drafted the will and who was named as executor thereof; that Mr. Yoder was equally unfamiliar with the technical meaning and effect of legal phrases in the creation of estates by will or otherwise; that it was the intention of the testator to die intestate as to the reversion after

the termination of the life estate created by the 4th item of the will, and that he had so stated his intention at the time of its execution, being advised by Mr. Yoder that such was the effect of the language used; that all the beneficiaries under the will had acquiesced in such construction until a long time after the death of testator.

The conveyance of the fee in said parcels of real estate by Cecilia Hurxthal and William B. Yoder, trustee, to John Fitzmorris, and by Mr. Fitzmorris to appellant Thomas P. Brown, is set forth. It is alleged that these conveyances constitute a cloud on appellee's title to the reversionary interest in said real estate as one of the heirs of the testator. It is prayed that the deeds to Fitzmorris and appellant be declared to vest nothing more than an interest or estate for the life of Cecilia Hurxthal, and that the will be construed accordingly. A motion to dismiss was filed, which having been overruled this special appeal was granted.

*Mr. Wm. Meyer Lewin,* for the appellant:

1. The motion to dismiss does not admit the averments of the bill as to the construction of the will, but raises thereon a matter of law for the determination of the court. *Naganab* v. *Hitchcock,* 25 App. D. C. 204. It also reaches the question of the admissibility of the testator's declaration as to his intention; for, like the demurrer, the motion admits only such averments of the bill as are well pleaded. It does not admit that the construction of the will set forth in the bill is the true one, nor that its legal effect is contrary to that which its language imports. The very object of a demurrer in such a case is to submit the question presented by the instrument as a matter of law for the determination of the court. *Interstate Land Co.* v. *Maxwell Land Co.* 139 U. S. 569, 577, 578; *Lea* v. *Robeson,* 12 Gray, 285, cited and followed in *Dillon* v. *Barnard,* 21 Wall. 430, 438. See also Story, Eq. Pl. 10th ed. sec. 452, note (a). By parity of reasoning the motion raises the question of the effect of the acquiescence by the executor, the trustee, the

niece, and the plaintiff in the construction sought to be placed upon the will by the testator through his declarations.

2. Any statements on the part of the testator as to his intention are inadmissible to show the construction or extent of the devise. *Atkins* v. *Best,* 27 App. D. C. 152; *Barber* v. *Pittsburg R. Co.* 166 U. S. 83, 109. A testator is always presumed to use the words in which he expresses himself according to their strict and primary acceptation, unless, from the context of the will, it appears that he has used them in a different sense. The will must be complete in itself, and not be dependent upon extrinsic evidence to show what is really intended to be devised by it. *Crenshaw* v. *McCormick,* 19 App. D. C. 502. Evidence cannot be heard to show a different intention in the testator from that which the will discloses. *Wilkins* v. *Allen,* 18 How. 385, 393; *Travers* v. *Reinhardt,* 205 U. S. 423, 432; *Kaiser* v. *Brandenburg,* 16 App. D. C. 315; *Defreese* v. *Lake,* 109 Mich. 419; *Throckmorton* v. *Holt,* 180 U. S. 552, 575.

3. It was well said by the learned chancellor in the court below, in declining to consider the averments in regard to the acquiescence by certain parties in the construction of the will by the inadmissible declarations of the testator, that there is no statement to the effect that anyone has changed his position by virtue of such construction, either by acting or failing to act on account of it. Whether the testator died intestate as to the fund in question is a matter of construction, and not a matter of fact. The court must act on its own views of the law. The admissions of the parties are not entitled to control. *Turner's Appeal,* 48 Mich. 373.

In most of the cases the courts seem not to have lost sight of the fact that the will sought to be "construed" by the "parties" is not the will of the beneficiaries but of the testator, and an examination of the authorities will disclose that wherever such construction is given weight by the court, in the absence of a manifest ambiguity, it has been because of (1) a compromise of some bona fide dispute, of which compromise a court of equity would decree specific performance, or because of (2) some basis for estoppel. *Emery* v. *Haven,* 67 N. H. 503.

4. The testator did not die intestate as to the reversion of the real estate mentioned in the fourth clause of his will. Where a testator makes a general devise of his real estate, especially by a residuary clause, he will be considered as meaning to dispose of such property to the full extent of his capacity. *Taylor* v. *Leesnitzer,* 37 App. D. C. 361; *Galloway* v. *Galloway,* 32 App. D. C. 80; *English* v. *Cooper,* 183 Ill. 209; *Williams* v. *Heard,* 140 U. S. 529, 543; *Lambert* v. *Paine,* 3 Cranch, 97, 134, 135.

5. Without adverting to what constituted, in the ancient law, a seisin in law, as contradistinguished from a seisin in deed, it is sufficient to say that for centuries the language of the law has been that a reversioner is "seised" of the reversion, although defendant upon an estate for life. 1 Washb. Real Prop. 6th ed., Sect. 116. Seisin was originally the completion of the feudal investiture. In American jurisprudence it means, generally, ownership. *McNitt* v. *Turner,* 16 Wall. 352, 361, 362.

6. The testator recognizes both of his direct heirs in the will The circumstances that his mind was clearly directed to each, and that he has carefully measured out his bounty to each, discriminating between them so as to show perhaps some inequality of affection, operate powerfully against the opinion that he intended to leave any part of his property to descend upon them by the silent operation of the law. *Galloway* v. *Galloway,* 32 App. D. C. 79; *Finlay* v. *King,* 3 Pet. 346, 379, And the heir is no longer favored. *Atkins* v. *Best,* 27 App. D. C. 153.

7. It would seem that the fourth clause comes under the rule that a devise of the rents and profits passes the land itself. *Pollock* v. *Farmers' L. & T. Co.* 157 U. S. 429, 580, 589. But this is not deemed important, since the same rules of law apply irrespective of the character of Cecilia Hurxthal's rights. *Doe* v. *Considine,* 6 Wall. 458, 469.

8. The rule in a case such as this is that where a testator gives several legacies, and then makes a general residuary disposition of the whole estate, blending the realty and per-

sonalty together in one fund, the real estate will be charged with legacies. *Readman* v. *Ferguson,* 13 App. D. C. 73. And, while he did not wish the legacies to be charged against the real estate, during Cecilia's life, he was willing that the reversion might be sold, if necessary, for their payment, if such charge should prove to be necessary. *O'Brien* v. *Dougherty,* 1 App. D. C. 164.

9. The term "after" as used in the residuary clause does not designate the time at which one thing is done in reference to something else; but it expresses the relative priority and subordination of one claim to another in matter of right. *Leadwell* v. *Cordis,* 5 Gray, 353; *Tindall* v. *Tindall,* 24 N. J. Eq. 512.

10. There is nothing in the fourth clause of the will to prevent the reversion from passing under the residuary clause, which is ample to carry the reversion, even though the beneficiary is the same in both clauses. *Young* v. *Norris Peters Co.* 27 App. D. C. 147; *Davis* v. *Callahan,* 78 Me. 318; *Craig* v. *Rowland,* 10 App. D. C. 414; *Mayer* v. *Am. S. & T. Co.* 33 App. D. C. 398. There is nothing inconsistent or repugnant in the gift of a life estate with a remainder to a life tenant, even though such remainder can never come into the possession of the remainderman. *Cushman* v. *Arnold,* 185 Mass. 169; *Chesman* v. *Cummings,* 142 Mass. 70. While it may be unusual it is by no means unheard of for a testator to devise a life estate and leave the remainder to a class that would include the life tenant. *Robinson* v. *Mitchell,* 99 Md. 62. The construction of the residuary clause is not dependent upon the testator's intention "in the loose sense of the word" (18 App. D. C. 25), for one of the objects of a residuary clause is to gather up unremembered rights.) *Mayer* v. *Am. S. & Tr. Co.* 222 U. S. 295, 300.

11. A general residuary devise carries every real interest, whether known or unknown, immediate or remote, unless it is manifestly excluded. The intention to include is presumed, and an intention to exclude must appear from other parts of the will, or the residuary devisee will take. *Floyd* v. *Carow,* 88

N. Y. 568, cited with approval in 113 N. Y. 127. There is no one named or designated as devisee of the remainder, if only a life interest is to be carved out of the testator's estate. Such a construction would not only be contrary to the express language of the residuary clause, and would uphold only a portion of the whole will, but would result in intestacy, an effect which courts in this country and in England have for a long time sought to avoid unless absolutely forced upon them. *Davis* v. *Callahan,* 78 Me. 318, cited in 27 App. D. C. 147.

12. A devise of lands "not before devised," or "not before disposed of," carries the reversion in lands which the testator had previously devised for life. Jarman, Wills, 6th ed. Bigelow, *617. There is no room for doubt that a devise of his "other land" carries the reversion after a devise of the same tract to the testator's wife during her life or widowhood. *Watson* v. *Watson,* 110 Mo. 164. A devise of all the property that I have not willed away passes the reversion in land after a devise of a life estate to his wife in that same tract. *Page* v. *Atkins,* 60 N. C. 268.

*Mr. John Connolly, Jr.,* and *Mr. Charles Fahy,* for the appellee, in their brief cited:

*Adams* v. *Massey,* 184 N. Y. 62; *Allum* v. *Fryer,* 3 Ad. & El. N. S. 442; *Andrus* v. *Vreeland,* 29 N. J. Eq. 394; *Areson* v. *Areson,* 3 Den. 464; *Calkins* v. *Best,* 27 App. D. C. 153; *Beall* v. *Holmes,* 6 H. & J. 209; *Blake* v. *Hawkins,* 98 N. S. 324; *Bumpus* v. *Bumpus,* 79 Hun, 530; *Cecil* v. *Cecil* (1914) 161 Ky. 419; *Chase* v. *Stockett,* 72 Md. 241; *Chesman* v. *Cummings,* 142 Mass. 65; *Clarke* v. *Boorman,* 18 Wall. 493, 502, 503; *Colville* v. *American Security & T. Co.* 10 App. 68; *Coulter* v. *Crawfordsville Co.* 45 Ind. App. 64; *Craig* v. *Rowland,* 10 App. D. C. 402; *Cruit* v. *Owen,* 25 App. D. C. 519; *Cushman* v. *Arnold,* 185 Mass. 169; *Minor* v. *Dabney,* 3 Rand. (Va.) 201; *Davis* v. *Callahan,* 78 Me. 313; *Dawson* v. *Waggaman,* 23 App. D. C.; *De Vaughn* v. *De Vaughn,* 3 App. D. C. 53; *Doe* v. *Considine,* 6 Wall. 458, 469; *Doe* v. *Roe,* 1 Wend.

550; *Duncan* v. *Wallace,* 114 Ind. 171; *Dunn* v. *Hines,* 164 N. C. 116; *Emery* v. *Haven,* 67 N. H. 503; *English* v. *Cooper,* 183 Ill. 209; *English's Estate,* 242 Pa. 457; *Faul* v. *Hulick,* 18 App. D. C. 25; *Finlay* v. *King,* 3 Pet. 346, 379; *Floyd* v. *Carow,* 88 N. Y. 568; *Fowler* v. *Fay,* 62 Ill. 377; *Galloway* v. *Galloway,* 32 App. D. C. 79; *Graham* v. *Graham,* 23 W. Va. 40; *Hambleton* v. *Darrington,* 36 Md. 434; *Harris* v. *Mills,* 4 N. C. 149; *Harvey* v. *Kennedy,* 80 N. Y. Supp. 878; *Holcomb* v. *Wright,* 5 App. D. C. 83; *Hooe* v. *Hooe,* Wythe (Va.) 190; *Horde* v. *M'Roberts,* 1 Call. (Va.) 337; *Hoyt* v. *Hoyt,* 69 N. H. 305; *Hunting* v. *Emmart,* 55 Md. 276; *Jessup* v. *Witherbee Co.* 117 N. Y. Supp. 276; *Johnson* v. *Stanton,* 30 Conn. 297; *Johnson* v. *Washington L. & T. Co.* 33 App. D. C. 257; *Kennon* v. *M'Roberts,* 1 Wash. (Va.) 111; *Killam* v. *Adams,* 52 Barb. 605; *Klock* v. *Stevens,* 45 N. J. Eq. 606; *Ladies' Union Soc.* v. *Van Netta,* 88 N. Y. Supp. 413; *Lambert* v. *Paine,* 3 Cranch, 97, 129, 131; *Leadwell* v. *Cordis,* 5 Gray, 353; *Lynch* v. *Lynch,* 37 West L. R. 11; *McAleer* v. *Schneider,* 2 App. D. C. 467; *McCaffrey* v. *Manogue,* 196 U. S. 563, 569; *McGuigan* v. *Jaeger,* 36 App. D. C. 229; *Mather* v. *McClure,* 136 N. Y. 238; *Montgomery* v. *Brown,* 25 App. D. C. 493; *Mayer* v. *American S. & T. Co.* 33 App. D. C. 398, 222 U. S. 295, 300; *Moore's Estate,* 241 Pa. 253, 257; *Morgan* v. *Burrows,* 45 Wis. 279; *Mudge* v. *Blight,* Cowp. 355, 1 Munf. (Va.) 548; *Nolan* v. *Bolton,* 125 Ga. 352; *O'Brien* v. *Dougherty,* 1 App. D. C. 164; *Page* v. *Atkins,* 60 N. C. 268; *Pate* v. *French,* 122 Ind. 14; *Phillips* v. *Melson,* 3 Munf. (Va.) 76; *Pollock* v. *Farmer's L. & T. Co.* 157 U. S. 429, 580, 589; *Pullman Co.* v. *Missouri P. Co.* 115 U. S. 587; *Readman* v. *Furgerson,* 13 App. D. C. 60, 73; *Riker* v. *Cornwell,* 113 N. Y. 115; *Robinson* v. *Mitchell,* 99 Md. 62; *Schlottman* v. *Hoffman,* 73 Miss. 189; *Shaw* v. *Bull,* 12 Mod. 593; *Smith* v. *Bartlett,* 79 App. 178; *Simms* v. *Georgetown College,* App. D. C. 72; *Smith* v. *Bell,* 6 Pet. 68; *Smith* v. *Roberts,* 91 N. Y. 470; *Stewart* v. *Masterson,* 131 U. S. 151, 158; *Strong* v. *Seatt,* 2 Burr. 912; *Taylor* v. *Leesnitzer,* 37 App. D. C. 361; *Tobias* v. *Ketcham,* 32 N. H. 330; *Toronto* v. *Chicago, etc., R. R. Co.* 123 N. Y. 37; *Travers*

v. *Rheinhart,* 25 App. D. C. 567; *Turnner's Appeal,* 48 Mich.
373; *Turnner et al.* v. *Mather,* 83 N. Y. Supp. 1013; *Van Gil-
lurve* v. *Becker,* 106 N. Y. Supp. 1080; *Vogt* v. *Vogt,* 26 App.
D. C. 46; *Walston* v. *White,* 5 Md. 297; *Warner* v. *Miltenberg-
er,* 21 Md. 264; *Watson* v. *Martin,* 228 Pa. 250; *Watson* v.
*Watson,* 110 Mo. 164; *Wright* v. *Page,* 10 Wheat. 204, 227,
288; *William* v. *Heard,* 140 U. S. 529, 543; *Wiltsie* v. *Shaw,*
100 N. Y. 196; *William* v. *Goodlitle,* 10 B. & Cr.; *Young* v.
*Norris Peters Co.* 27 App. D. C. 147; 24 Am. & Eng. Enc. Law,
420 et seq.; Shouler, 5th ed. sec. 474; Washburn 6th ed. 116;
Whart. Ev. sec. 992; Code secs. 146, 1617, 1019.

Mr. Justice Robb delivered the opinion of the Court:

We first will dispose of the contention of appellee (not de-
termined by the court below), that the alleged declarations of
the testator at the time of the execution of this will may be
taken into consideration to determine the meaning of the lan-
guage used in the will itself.    Clearly, under every rule of
construction, such declarations may not be considered in the
circumstances here disclosed.   While evidence of such extrinsic
circumstances as the testator's relations to persons, or the
amount, character, and condition of his estate, sometimes is ad-
missible to explain ambiguities of *description,* it never is
suffered to enlarge or diminish the estate devised.   *Atkins* v.
*Best,* 27 App. D. C. 148; *Barber* v. *Pittsburgh, Ft. W. & C.
R. Co.* 166 U. S. 83, 41 L. ed. 925, 17 Sup. Ct. Rep. 488.   It
always is presumed that a testator used the words in which he
expressed himself according to their strict and primary accepta-
tion, "unless, from the context of the will," it appears that he
used them in a different sense, when they will be construed as
from the will itself it is apparent he intended them to be con-
strued.   *Crenshaw* v. *McCormick,* 19 App. D. C. 494.   In that
case it was pointed out that as the statute requires that a will
shall be in writing and attested by witnesses, such an instrument
cannot be made effectual as a will by means wholly independent
of the attested writing.   The court said: "The will must be com-

plete in itself, and not be dependent upon extrinsic evidence to show what is really intended to be devised by it."

What, therefore, was the intent of the testator, as gathered from the language employed in the will itself? Did he intend to vest in his niece nothing more than a life interest in this real estate and die intestate as to the reversion, or did he intend by clause 4 to vest in her at least a life estate and by the residuary clause the remainder in fee, providing that could be done consistently with the carrying out of the other provisions of the will? By adopting the latter view, full force and effect will be given to the actual language used in the will, and as well to the rule that where a testator makes a general devise of his real estate by a residuary clause it will be presumed that he intended to dispose of such property to the full extent of his capacity. *Galloway* v. *Galloway,* 32 App. D. C. 77; *Taylor* v. *Leesnitzer,* 37 App. D. C. 356; and *English* v. *Cooper,* 183 Ill. 203, 55 N. E. 687.

While we attach no importance to the striking from the bill the averment to the effect that the testator left no real estate other than that mentioned in clause 4 of the will, for the reason that the residuary clause embraces all the residue of his estate, "real, personal or mixed" (*Emery* v. *Haven,* 67 N. H. 503, 35 Atl. 940), it is strange that appellee, fourteen years after the death of the testator, his uncle, should have been in ignorance of the existence of other real estate, for of course it must be presumed that had he known of other real estate he would have mentioned it in his bill.

Again, turning to the provisions of this will we find that the testator evidently had very carefully considered the relative claims upon him of those whom he desired to remember. Each of the heirs at law and relatives mentioned in the bill was the recipient of his bounty,—none was forgotten. He left twice as much to the appellee as to his direct heir, the appellee's father, as he had a right to do. By clause 4, for reasons satisfactory to him, he insured to his niece, Cecilia Hurxthal, a life interest in the only real estate which, so far as appears, he owned. To her daughter, his great-niece, he left twice as much as to his

nephew, the appellee, and to her granddaughter, his great-great-niece, he left a substantial sum. It therefore is apparent that this niece, her child, and grandchild, were the special objects of his solicitude and bounty. In his residuary clause he employed language which, if accorded its natural and ordinary signification, gathered everything remaining after the carrying out of the other provisions of the will, and left nothing to descend under the intestate laws. While he was an old man, it hardly will be contended that at the time of the execution of his will he knew to a certainty how much of his property would be required to see him through. Neither could he tell with absolute certainty what would be the condition of his estate at the time of his decease. He *did* know, however, that he had made certain specific bequests, and those he wished "fully carried out and settled." After that, he provided in plain and unambiguous language that all his estate, real, personal, or mixed, wherever the same might be found, should go to his niece. To the others he made specific bequests; to her he gave everything remaining. She, and she alone, was his residuary legatee. In our view, the provisions of this will are not only consistent with an intent on the part of the testator to dispose of his entire estate, but inconsistent with a contrary intent. Plainly, therefore, it is our duty to give full force and effect to what we conceive to have been the intent of the testator, as gathered from the instrument before us.

We agree with the learned trial justice that the allegation in the bill as to the so-called acquiescence by the parties in the construction placed upon the will by the appellee has no force, because it is not alleged that anyone has changed his position in virtue thereof, either by acting or failing to act.

The decree must be reversed, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.                         *Reversed and remanded.*