In re Charles T. DUROSKO
MARITAL TRUST.

William Henry Ziegler,
et al., Appellants,*

v.

Charles T. Durosko, Appellee.

No. 01–PR–244.

District of Columbia Court of Appeals.

Argued Jan. 8, 2002.
Decided Dec. 2, 2004.

* By Order of this court dated August 18, 2004, Ann Ziegler, was substituted as a party appel-
lant for William Henry Ziegler.

Charles H. Fleischer, with whom Samuel S.D. Marsh, Bethesda, MD, was on the brief, for appellants.

Nicholas D. Ward, Washington, DC, for appellee.

Before WAGNER, Chief Judge, and KING and STEADMAN,** Senior Judges.

WAGNER, Chief Judge:

Appellants, William Henry Ziegler, as co-trustee, and Sarah Horning Ziegler, individually and as next friend of Ann B. Ziegler and Christine E. Ziegler, minors (Zieglers) filed an action against appellee, Charles T. Durosko (Durosko or settlor), to reform and construe an inter vivos trust established by Durosko (CTD Trust). In the trial court, the Zieglers argued that construction or reformation of the trust was required because its provisions regarding Durosko's continuing power to revoke were in conflict. Concluding that Durosko's power to revoke the CTD Trust was unambiguously set forth in the trust instrument and that there was no justification for the admission of extrinsic evidence to show a contrary intent, the trial court granted Durosko's motion for summary judgment. On appeal, the Zieglers argue that the trial court erred in granting summary judgment and declining to grant their motion to compel discovery. We hold that the trust instrument was ambiguous as to the continuing power of Durosko to revoke, making the admission of extrinsic evidence appropriate. We conclude further that: (1) having filed a timely affidavit under Super. Ct. Civ. R. 56(f) seeking deferral of the motion for summary judgment pending further discovery, the Zieglers were entitled, under the facts presented, to have the court's ruling deferred; (2) the trial court erred in denying the motion to compel, since it could have led to the discovery of admissible evidence; and (3) Durosko is not entitled to a judgment as a matter of law on the present record. Therefore, we reverse and remand for further proceedings consistent with this opinion.

I.

A. *Factual Background*

Appellant, William Ziegler, is the only child of Lorraine Ziegler Durosko (Mrs. Durosko), now deceased, and Henry Ziegler, Jr. Lorraine and Henry Ziegler, Jr. were divorced in 1966, and Lorraine married appellee, Charles Durosko, on or about December 31, 1994. In late 1997, the Duroskos engaged an attorney, Mary Hayes Lawrence, to provide estate plan-

** Judge Steadman was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on October 18, 2004.

ning services. On November 25, 1997, Mr. Durosko executed the document that is at issue in this appeal, the "Charles T. Durosko Revocable Trust Agreement" (CTD Trust).[1] The CTD Trust provides in Article 3 that upon Mrs. Durosko's death, if Mr. Durosko is surviving, the remaining trust assets are to be placed in the irrevocable Durosko Marital Trust (Marital Trust) and administered in accordance with Article 8 of the CTD Trust. However, Article 8 actually relates to the Family Trust, while Article 9 provides for the establishment of the Marital Trust, which Durosko stated was intended to be "an irrevocable qualified terminal interest property trust." In Article 9, Durosko appointed appellee, William Henry Ziegler, to serve with him as co-trustee of the Marital Trust. During Durosko's lifetime, and until the "division date," the co-trustees were to pay from the Marital Trust, the income to Durosko in quarterly installments or more frequently, and the principal, in the trustees' discretion, in accordance with Durosko's needs and desires.

A "division date" is described in Article 9 B as "the first date on or after [Durosko's] death." On such date, the co-trustees were to distribute the remaining assets as follows: (1) to the Personal Representative of Durosko's estate, "an amount equal to the federal and state estate taxes ... payable by reason of the inclusion of part or all of the value of [the] Marital Trust in the computation of estate taxes payable upon [his] death by his Personal Representative"; and (2) the rest and remainder as directed by Article 6 of the CTD Trust. Article 6 provides for distribution to William Henry Ziegler, if living, and if not, for division of the trust estate into two equal shares, one-half distributable to William Ziegler's wife, Sarah Ziegler, if certain conditions

exist, and one-half, among the surviving children of William Ziegler in accordance with Article 6.

In Article 14 of the CTD Trust, Durosko reserved to himself "at all times prior to [his] death," the following rights and powers pertinent to the appeal:

A. To cancel and terminate, or amend this Trust Agreement or any trust established under this Trust Agreement, in whole or in part, by notarized written instrument delivered to my Trustee, without the consent of my Trustee or any beneficiary.

B. To require my Trustee to distribute to me such assets of the Trust Estate as I may direct in writing.

On February 3, 1998, Durosko executed a First Amendment to the CTD Revocable Trust, amending paragraph A of Article 9. On July 22, 1998, Mrs. Durosko died in an automobile accident. On September 16, 1998, Durosko revoked the CTD Trust, conveyed the real property from the Trust to himself individually and delivered the personal property of the Trust to himself.

### B. *Procedural History*

The Zieglers filed a verified complaint, requesting that the trial court construe or reform an inter vivos trust (the CTD Trust) established by appellee, Charles T. Durosko (Durosko). They alleged in the complaint that construction or reformation was required because provisions regarding Durosko's continuing power to revoke were in conflict. The Zieglers also requested in the complaint that the court impose a constructive trust on the assets that Durosko distributed to himself after purporting to revoke the CTD Trust. Durosko filed a motion for summary judgment, supported by his own affidavit in

---

1. That same date, Lorraine Durosko executed the Lorraine Ziegler Durosko Revocable Trust Agreement (LZD Trust) and her Last Will and Testament.

which he averred that he never intended the CTD Trust to become irrevocable prior to his death. He further stated in the affidavit that he had acquired the real property placed in the Trust through his late first wife, Ellen Loretta Durosko, and that he had placed Mrs. Lorraine Durosko's name on the deed without consideration. Durosko also supported the motion with a copy of a letter from an attorney, not the scrivener of the Trust instrument, expressing the opinion that it made "no sense for a widower's own Trust to be an 'irrevocable qualified terminal interest property trust.'" The Zieglers opposed the summary judgment motion as premature. They submitted an affidavit under Super. Ct. Civ. R. 56(f) explaining that they had not had sufficient time to pursue discovery and were then unable to present additional facts in opposition to the motion. They also initiated discovery from the scrivener of the CTD Trust, Mary Hayes Lawrence.

Ms. Lawrence appeared for a deposition. However, as a result of Durosko's attorney-client privilege objections, Ms. Lawrence refused to answer any questions about the intent, purpose or drafting history of the CTD Trust and she refused to produce any of her files. Unable to resolve the discovery dispute informally, the Zieglers moved to compel the scrivener's testimony and production of her files. In a Memorandum Opinion and Order, the trial court determined that attorney-client privilege did not apply because the privilege had been waived, since the Duroskos had permitted Mr. Ziegler to attend one of three meetings with their attorney and one meeting with the attorney and Mr. Durosko. However, the trial court denied the Zieglers' motion to compel further discovery on the ground that the scrivener's testimony could not lead to admissible evidence. The court reasoned that the scrivener's testimony was not admissible to establish Durosko's intent because: (1) the

trust instrument was unambiguous in reserving the right of the settlor to revoke the trust at any time, and extrinsic evidence is not admissible to show otherwise; (2) Durosko was available to provide the most competent evidence of his intent; and (3) Durosko's exercise of the power reserved under Article 14 during Mrs. Durosko's lifetime evidenced his intention to retain the power to amend or terminate the trust.

In the same Memorandum Opinion and Order, the trial court granted summary judgment for Durosko. The court concluded that language in Article 14 reserving to Durosko the power to revoke the trust at any time during his lifetime was clear and unambiguous and, therefore, extrinsic evidence was inadmissible to vary its terms. The court also stated that Durosko's affidavit supported his intention to include the right to terminate the trust throughout his lifetime. The court treated as further legal arguments, the letter in support of the motion from an attorney, Dena C. Feeney, offering a professional opinion about why the trust was revocable despite any internal references to irrevocability. As for the Zieglers' claim that there was an inconsistency as to revocability between Article 3 incorporating Article 9 (erroneously designated Article 8) and Article 14, the trial court determined that the trusts in Articles 3 and 9 were not the same as the originating CTD Trust itself. The court stated further, in pertinent part:

The Marital Trust [under Article 9] was to be formed only if and when [it] received assets from the originating Trust .... Thus, if the originating CTD Trust were terminated, no disbursement to the new Marital Trust would ever take place. The language in Article 14 as to the right of termination specifies that this right could be exercised at *any* time, not merely before the death of the

grantor's wife. This pivotal fact means everything.

On the one hand, since the power to terminate was not *internally* limited to the period prior to the wife's death, the mere fact of her death did not cut off the grantor's options. In other words, the CTD "Revocable" Trust was completely revocable. The fact that the grantor initially planned to fund some *other* Trust that would be irrevocable in character is a distinction that has no connection to the CTD Revocable Trust.

The trial court also held that the references to a "marital trust," despite Durosko's status as a widower, made Article 3 "moot and unenforceable" and justified its severance from the CTD Trust instrument. The CTD Trust had a severability clause, providing for the continued validity of the remaining provisions if any of its provisions were unenforceable. The trial court determined that extrinsic evidence was not admissible to show that the settlor did not intend to reserve the right of revocation during his lifetime, since it concluded that the relevant provisions of the trust instrument are clear and unambiguous.

## II.

### *Analysis*

The Zieglers argue that the trial court erred in granting Durosko's motion for summary judgment and declining to grant their motion to compel discovery. They contend that, since they submitted an affidavit pursuant to Super. Ct. Civ. R. 56(f), alerting the court to their inability to provide opposing evidence without formal discovery, the trial court should have deferred its ruling or denied the motion for summary judgment. They contend that, contrary to the trial court's ruling, the testimony of the scrivener of the CTD Trust, which they sought through deposition, would lead to admissible evidence needed to resolve ambiguities and reform

mistakes in the inter vivos trust instrument. Durosko responds that the scrivener's testimony is not admissible to establish his intent to reserve the power to revoke the trust because his intent is set forth unambiguously in the trust instrument and, in any event, the settlor's affidavit in support of the motion is the best extrinsic evidence of his intent.

### A.

In reviewing the trial court's ruling on a motion for summary judgment, this court applies the same standard as the trial court. *Zhou v. Jennifer Mall Rest. Inc.*, 699 A.2d 348, 350 (D.C.1997) (citing *Osei–Kuffnor v. Argana*, 618 A.2d 712, 713 (D.C. 1993)) (other citation omitted). Summary judgment may be granted if, "construing the evidence in the light most favorable to the nonmoving party, [the court] determines (1) there is no genuine issue of material fact, and (2) the moving party is entitled to judgment as a matter of law." *McAllister v. District of Columbia*, 653 A.2d 849, 850 (D.C.1995) (citing *Nader v. de Toledano*, 408 A.2d 31, 41 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980) and Super. Ct. Civ. R. 56(c)). On appeal, this court reviews the record *de novo* "to determine whether the trial court properly applied those standards." *Id.* (citing *West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 725 (D.C.1994)). If the facts are undisputed and there is only a question of law, reversal will be required only if the trial court reached an erroneous conclusion on the issue. *R.D.H. Communications, Ltd. v. Winston*, 700 A.2d 766, 768 (D.C. 1997) (citing *Dale Denton Real Estate v. Fitzgerald*, 635 A.2d 925, 927 (D.C.1993)).

The provisions of Super. Ct. Civ. R. 56(f) provide a means to protect against the premature grant of summary judgment when the non-movant is unable to

oppose a motion for summary judgment without obtaining discovery. *McAllister, supra,* 653 A.2d at 852 (citing Super. Ct. Civ. R. 56(f)). To invoke the protection of the rule, a party must file "an affidavit stating how discovery would aid him or her to effectively oppose the summary judgment motion." [2] *Id.* at 852–53 (citing *Guthrie v. Sawyer,* 970 F.2d 733, 738 (10th Cir.1992)). Upon the filing of a Rule 56(f) affidavit, the court may deny the motion, grant additional time for discovery or for the party to obtain opposing affidavits, or it may make any order that is just under the circumstances. *See* Super. Ct. Civ. R. 56(f).

The Zieglers filed a Rule 56(f) affidavit in the trial court, asserting that one of the issues for resolution in the case was an inconsistency in the Trust "relate[d] to whether or not the Trust became irrevocable upon the death of Lorraine Ziegler Durosko...." In their affidavit, the Zieglers pointed out that Durosko had averred in his supporting affidavit to his motion for summary judgment that he "never intended the ... Trust to become irrevocable except upon [his] death[,]" and that he had submitted a letter from an attorney (not the scrivener) expressing the opinion that the Trust remained revocable after the death of Mrs. Durosko. The Zieglers explained their need for further discovery to assist them in obtaining evidence refuting these claims and their inability to obtain information from Mary Hayes Lawrence, the attorney who had been engaged by appellee and the late Mrs. Durosko for estate planning purposes and who had prepared the Trust instrument that is the subject of this litigation. The Zieglers sought "to pursue additional discovery addressed to [the] estate planning intentions [of Durosko and his late wife, Lorraine Ziegler Durosko], and if necessary to engage an expert to testify as to the proper interpretation and meaning of the Trust." [3] Affiant, William Ziegler, asserted that he was present at Ms. Lawrence's office when Durosko and his wife executed a number of estate planning documents.

The trial court determined that no useful purpose would be served by the resumption of the deposition of the Duroskos' attorney because: (1) appellee's reservation of the power of revocation throughout his lifetime, which the Zieglers challenge, is set forth unambiguously in Article 14 of the Trust instrument; (2) the law precludes the introduction of the testimony of the scrivener to establish the intent of the settlor; (3) the rule against the scrivener's hearsay is more potent when the grantor of the trust is still living and confirms his intent by affidavit; (4) and Durosko's intent to reserve the powers set forth in Article 14 is shown by his exercise of power provided therein during his wife's lifetime. In summary, the trial court concluded that "[t]here is no ambiguity of any kind that would justify the Court's consideration of any extrinsic evidence as to the personal intent of Charles T. Durosko[;]" therefore, it denied appellants'

2. Rule 56(f) provides as follows:
   Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the [c]ourt may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

3. The Zieglers commenced the deposition of Ms. Lawrence, the scrivener of the Trust; however, she would not answer questions concerning what took place during meetings with her clients because Mr. Durosko invoked the attorney-client privilege.

motion to compel and granted summary judgment for Durosko.

The Zieglers argue that the trial court erred in granting summary judgment. They contend that the general revocability provision in Article 14 of the Trust, when considered with other provisions of the Trust instrument, make the grantor's intent unclear, thereby creating an ambiguity that requires the admission of extrinsic evidence to resolve it. Having examined the Trust document in question and the applicable legal principles, we conclude that the Zieglers' argument is persuasive and that the grant of summary judgment was premature.

## B.

■ The general rule at the time the Trust was created[4] was that "there is a legal presumption that a trust is irrevocable, unless there is express provision to the contrary." *Teachers Annuity & Aid Ass'n v. Riggs Nat'l Bank of Wash., D.C.*, 108 U.S.App. D.C. 7, 12, 278 F.2d 452, 457 (1960) (citing *Liberty Nat'l Bank v. Hicks*, 84 U.S.App. D.C. 198, 202, 173 F.2d 631, 635 (1949); *Hurt v. Gilmer*, 59 App.D.C. 282, 40 F.2d 794 (1930)). Thus, a trust "may not be revoked or modified by the settlor, unless the power of revocation or modification is reserved when the trust is set up." *Id.* In this case, in Article 14, Durosko reserved to himself "during his lifetime," the power "[t]o cancel and terminate, or amend [the] Trust Agreement, in whole or in part ... without the consent of [his] Trustee or any beneficiary ...." The Zieglers argue, however, that other provisions in the Trust Agreement render Durosko's intent with respect to revocability unclear and ambiguous, making the consideration of extrinsic evidence necessary to

glean Durosko's intent at the time he created the Trust.

■ "The intent and purpose of the settlor is the law of the trust." *Albright v. United States*, 308 F.2d 739, 743 (5th Cir. 1962). In determining the settlor's intent, consideration must be given to the language of the instrument as a whole, rather than to isolated passages. *Id.* (construing inter vivos trust agreement); *Estate of Mittleman v. Commissioner of Internal Revenue*, 173 U.S.App. D.C. 26, 30–31, 522 F.2d 132, 135–36 (1975) (construing testamentary trust); *see also Read v. Legg*, 493 A.2d 1013, 1016 (D.C.1985) (In ascertaining a testator's intent, the court considers the will as a whole, and not isolated portions.). If there is no ambiguity in the instrument, the settlor's intention must be determined from its four corners. *O'Connell v. Riggs Nat'l Bank of Wash., D.C.*, 475 A.2d 405, 408 (D.C.1984) (citing *Jewell v. Graham*, 57 App. D.C. 391, 24 F.2d 257, *cert. denied*, 277 U.S. 596, 48 S.Ct. 559, 72 L.Ed. 1006 (1928)). Under these principles, an examination of Article 14 in isolation would be insufficient, and the remaining provisions of the trust should be examined before determining the settlor's intention with respect to the revocability of the trust.

■ In support of their argument that the Trust instrument is ambiguous concerning the reservation by Durosko of the power to revoke the Trust after Mrs. Durosko's death, the Zieglers cite Articles 3 and 9 of the Trust Agreement. Article 3 provides, in pertinent part, that "[u]pon my wife's death, if I [Durosko] am surviving, the remaining trust assets shall be placed into the IRREVOCABLE DUROSKO MARITAL TRUST to be administered and distributed in accordance with Article 8 of this Trust Agreement." The Durosko

---

**4.** This rule has been reversed in this jurisdiction by the enactment of the Uniform Trust Act, but this change does not apply to trusts

established prior to March 10, 2004. D.C.Code § 19–1306.02(a) (2004 Supp.).

Marital Trust is actually governed by Article 9.[5] Article 9 provides, in pertinent part, that "[u]pon my wife's death, if I [Durosko] am surviving, the Trust Estate shall be held in Trust and known as the 'Durosko Marital Trust' .... It is my intention that the Marital Trust be an *irrevocable* qualified terminal interest property trust." (Emphasis added.) The Zieglers argue that these provisions rendered the Trust irrevocable and deprived Durosko of any opportunity to revoke the Trust and distribute the assets to himself after Mrs. Durosko's death.

■ We agree that Articles 3 and 9, which provide for the establishment of an irrevocable trust, are in conflict with Article 14, under which Durosko reserved the right to terminate the Trust Agreement or any trust established thereunder. If as Articles 3 and 9 provide, the trust established thereunder was to be irrevocable, Durosko would have no power to revoke or modify it. *See Teachers Annuity & Aid Ass'n, supra,* 108 U.S.App. D.C. at 12, 278 F.2d at 457. It is far from clear whether Article 14's reservation of the power to revoke the trust was intended to trump the irrevocability provisions of Articles 3 and 9. Thus, these conflicting provisions create an ambiguity. Where there is ambiguity in the document itself, extrinsic evidence is admissible to determine the intent of the settlor of the trust or testator

of a will. *District of Columbia v. Estate of Parsons,* 590 A.2d 133, 135 (D.C.1991) (citing *Knupp v. District of Columbia,* 578 A.2d 702, 704 (D.C.1990)); *Read, supra,* 493 A.2d at 1016–17 (citations omitted); *Petition of U.S. on Behalf & for Benefit of Smithsonian Instit.,* 485 F.Supp. 1222, 1236 (D.D.C.1980) (citing II SCOTT ON TRUSTS, § 164.1 at 1257, 1260 (3d ed. 1967)).

Durosko argues that Articles 3 and 9 are impossible to perform because they purport to establish an irrevocable qualified terminal interest property (QTIP) trust which requires a surviving spouse as beneficiary, not the settlor. Therefore, Durosko contends, the trial court properly determined that these provisions are unenforceable and should be severed in accordance with the severability provision in Article 13 E.[6] With these provisions eliminated, there would be no inconsistency, and Article 14 would control revocability. The Zieglers respond that any reformation of the trust should be as limited as possible. They contend that, to the extent that such an alteration is permitted or required, it should be limited to excising the references to "marital" and "qualified terminable interest property." They argue that this limited alteration would preserve the remainder of the trust which was intended to enure ultimately to the benefit of the Ziegler family after the deaths of

---

**5.** The trial court found that the reference in Article 3 to Article 8 was an obvious typographical error, as Article 9, rather than Article 8, governs the Irrevocable Durosko Marital Trust. None of the parties dispute this determination. Article 8 governs administration of a Family Trust, which, under Article 7, was to be created if Durosko's wife survived him. Under Article 7, the trust estate was to be divided into two shares: (1) one to be calculated with the view toward maximizing the amount that could pass free of federal estate tax; and (2) the remainder, a marital share, to be distributed to Mrs. Durosko. Article 8 specified how the Trustee should apply

the income from the Family Trust, and under certain circumstances the principal, for the benefit of Mrs. Durosko.

**6.** Article 13 E provides:

[i]f any provision of this Trust Agreement or the application of such provision to any person or circumstance, shall be held invalid or unenforceable, the remainder of this Trust Agreement, or the application of such provision to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby.

Mr. and Mrs. Durosko. Further, they contend that, in any event, the trust in Articles 3 and 9 could come into effect whether or not Durosko received the benefit of the tax treatment accorded a marital or QTIP trust.

The parties do not dispute that a marital trust intended to qualify as a QTIP trust for tax purposes involves property passing to a surviving spouse. *See* I.R.C. § 2056 (2004); *Miller v. United States,* 949 F.Supp. 544, 545–47 (N.D.Ohio 1996).[7] Therefore, it appears that Durosko, whose wife predeceased him, would not be eligible for the tax treatment accorded such trusts. The Zieglers argue that this factor in itself does not mandate cancellation of the irrevocable trust established under Article 9 with the remainder passing to Ziegler family members as specified by Article 6. A mistake as to tax consequences may form the basis of a suit to reform the trust, *see, e.g., Roos v. Roos,* 203 A.2d 140, 143 (Del.Ch.1964) (citing Scott on Trusts, § 333.4), or the interpretation of the trust in a manner that would qualify the taxpayer for certain tax treatment, *see e.g., Estate of Tuthill,* 754 A.2d 272, 275–76 (D.C.2000); *Estate of Mittleman, supra,* 173 U.S.App. D.C. at 28–31, 522 F.2d 132 at 134–37. However, even partial invalidity of a trust provision may not warrant termination of the trust, particularly where contingent interests are affected.[8] *Liberty Trust Co. v. Weber,* 200 Md. 491, 90 A.2d 194, 207–08 (Ct.App. 1952).

"[I]n construing a trust the court will endeavor to determine and to effectuate the ideas and purposes of the settlor at the time the trust gift was established." *Petition of U.S., supra,* 485 F.Supp. at 1235 (citing *Smith v. Bell,* 31 U.S. 68, 6 Pet. 68, 8 L.Ed. 322 (1932)). Aside from tax reduction or avoidance, there are other reasons for which one might establish a private trust. *See* Restatement (Third) of Trusts § 27(2) comment *b* (1) (2001). These include, among others, avoidance of probate, property management, limited and successive enjoyment of property over several generations, and insulation of the trust property from claims of beneficiaries' creditors. *Id.* On the limited record developed before summary judgment was granted for Durosko, we cannot say that the entire purpose for the trust created under Article 9 became impossible to perform and that by reason thereof, as a matter of law, cancellation of Articles 3, 6 and 9 was warranted. Therefore, the severability provision in Article 13 can not be invoked on this record to eliminate in their entirety the trust provision set forth in Articles 3, 6 and 9 on the grounds of invalidity or unenforceability.

---

7. Under the Economic Recovery Tax Act of 1981 (ERTA), a form of property interest known as qualified terminal interest property (QTIP) qualified for the marital deduction. *Miller, supra,* 949 F.Supp. at 545. "The QTIP exception permitted a grantor to retain control over the ultimate disposition of certain assets that were effectively passed through the estate of the surviving spouse, who received the benefit of the marital deduction in the process." *Id.* at 546. To qualify as QTIP property: (1) the surviving spouse must be entitled to all income from the property, payable annually or more frequently; and (2) "no person [can have] the power to appoint any part of the property to any person other than the surviving spouse." I.R.C. § 2056(b)(7)(B)(ii)(I) & (II); *see Miller,* 949 F.Supp. at 546.

8. If Durosko has no power to revoke the trust under Article 9 subsequent to his wife's death, then the rest and remainder, after specified deductions, pass to the Zieglers in accordance under the terms of Article 6. Thus, the Zieglers have a contingent interest that gives them standing to challenge Durosko's actions as contrary to the trust instrument. *See Hooker v. Edes Home,* 579 A.2d 608, 612 (D.C. 1990) ("[A] clearly identified intended beneficiary has a justiciable interest in enforcement of the trust.").

The ambiguity between Articles 3, 9 and 14 as to the revocability of the trust remains, and the admission of extrinsic evidence is permitted to ascertain the intentions with respect to both revocability and whether the trust established under Articles 3 and 9 should be reformed.[9] *See Tuthill, supra,* 754 A.2d at 274–75; *Read, supra,* 493 A.2d at 1017; *Vakas v. Manuel,* 114 U.S.App. D.C. 368, 369, 316 F.2d 369, 370 (1963).

■■■ Durosko argues that even if an ambiguity exists, the scrivener's testimony could not resolve it because the affidavit of Durosko, the settlor, establishes that there was a mistake and that the Trust was intended to be revocable. The trial court was persuaded similarly. The court held that the law precludes the introduction of scrivener evidence to establish the intent of the testator, which it found more potent, since the settlor is available to provide his own account of what occurred. In concluding that scrivener testimony was inadmissible, the trial court relied upon cases in which a party sought to change dispositive provisions of a will or include provisions for heirs not specifically named.[10] In the contexts of wills, this court has recognized that not every type of ambiguity can be corrected by the use of extrinsic evidence. *See Knupp, supra,* 578 A.2d at 705. In *Knupp,* this court held that the trial court properly excluded extrinsic evidence where there was nothing in the will from which it could be inferred that the testator intended Knupp to be the recipient of the testator's residual estate. *Id.* " '[N]o matter how clearly a testator's wish to make a particular disposition may ap-pear from sources outside the will, a court can not give it effect unless the words written into the will effect that disposition or are reasonably susceptible to the interpretation that they do.' " *Id.* at 705–06 (quoting *Estate of Kerr,* 139 U.S.App. D.C. 321, 332, 433 F.2d 479, 490 (1970)).

■■■ In this case, we confront an ambiguity as to the settlor's intention with respect to revocability in an inter vivos trust created by an inconsistency in its provisions. Given the ambiguity, it is appropriate to examine extrinsic evidence to determine the settlor's intent. *See Read, supra,* 493 A.2d at 1017 (citations omitted); *Vakas, supra,* 114 U.S.App. D.C. at 369, 316 F.2d at 370; *Miller, supra,* 949 F.Supp. at 548; *see also Tuthill, supra,* 754 A.2d at 274–75. Such evidence may include, among other things, the relationship and financial positions of the parties, the motives or purpose for the trust agreement, and scrivener error, if any. *Tuthill,* 754 A.2d at 274 n. 2, 275 (citations omitted). For purposes of trust reformation, a concept applicable to trusts rather than wills, clear and convincing evidence must support reformation. *Id.* at 275 (citing GEORGE T. BOGERT, TRUSTS § 146 (6th ed. 1987)). Such evidence may include the testimony of the attorney responsible for drafting the estate planning documents. *Id.* at 276 & n. 3 (citations omitted). The Zieglers never had an opportunity to present such evidence because the trial court determined that it would be inadmissible and that the settlor had expressed by affidavit his intention with respect to the trust. This was error because the evidence, if obtained through discovery as requested, would be admissible under the foregoing authorities.[11] The settlor's affi-

---

9. Durosko concedes that extrinsic evidence may be considered to ascertain the settlor's intent if the language of the trust is ambiguous.

10. The trial court relied upon *District of Columbia v. Adams,* 57 F.Supp. 946, 947 (D.D.C. 1944); *Brown v. Wells,* 45 App.D.C. 428, 437 (1916); and *McAleer v. Schneider,* 2 App.D.C. 461, 467 (1894).

11. Durosko has not cross-appealed to challenge the trial court's finding that the attorney-client privilege has been waived or is inapplicable for other reasons.

davit is not dispositive. It is only his after-the-fact factual assertion as to what he intended. The terms of a trust are determined by the settlor's intention at the time of creation of the trust, and not by his subsequent intention. *Petition of U.S., supra,* 485 F.Supp. at 1236 (quoting II SCOTT ON TRUSTS, § 164.1 at 1257, 1260 (3d ed. 1967)). There may be contrary evidence as to Durosko's expressed intention at that time from the drafter whom the Zieglers tried to depose. Ultimately, this may involve a factual determination for resolution at trial, thereby precluding summary judgment. *See McAllister, supra,* 653 A.2d at 850 (citations omitted).

### D.

In summary, we conclude that the trust instrument was ambiguous, making the admission of extrinsic evidence appropriate to resolve it. The Zieglers, having filed a timely affidavit under Super. Ct. Civ. R. 56(f), were entitled to have the court's ruling deferred on Durosko's motion for summary judgment to permit them to complete discovery and secure an expert as requested. *McAllister, supra,* 653 A.2d at 852. On the present record, Durosko is not entitled to a judgment as a matter of law. *Id.* at 850.

For the foregoing reasons, the judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

*Reversed and remanded.*